[Cite as *Holmes v. Crawford Machine, Inc.*, 2011-Ohio-5741.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## CRAWFORD COUNTY

JEFF HOLMES,

      PLAINTIFF-APPELLANT,             CASE NO. 3-11-09

      v.

CRAWFORD MACHINE, INC., ET AL.,      O P I N I O N

      DEFENDANTS-APPELLEES.

---

JEFF HOLMES,

      PLAINTIFF-APPELLANT,             CASE NO. 3-11-10

      v.

CRAWFORD MACHINE, INC., ET AL.,      O P I N I O N

      DEFENDANTS-APPELLEES.

---

JEFF HOLMES,

      PLAINTIFF-APPELLEE,

      v.                         CASE NO. 3-11-12

CRAWFORD MACHINE, INC.,

      DEFENDANT-APPELLANT,
      -and-                 O P I N I O N

STATE OF OHIO, BWC,

      DEFENDANT-APPELLEE.

Case No. 3-11-09, 10 and 12

---

**Appeals from Crawford County Common Pleas Court**
**Trial Court Nos. 10 CV 0221 and 11 CV 0003**

*Judgment Affirmed in Case No. 3-11-09*

*Judgment Reversed and Cause Remanded*
*in Appellate Case No. 3-11-10*

*Judgment Reversed and Cause Remanded*
*in Appellate Case No. 3-11-12*

**Date of Decision:   November 7, 2011**

---

**APPEARANCES:**

 *Barbara A. Knapic and Denise A. Gary* **for Crawford Machine, Inc.**

 *Jerald A. Schneiberg and Jennifer L. Lawther* **for Jeff Holmes**

 *Kevin Reis* **for Industrial Commission of Ohio**

**PRESTON, J.**

 **{¶1}** We are presented with three cases stemming from an injury that plaintiff/employee, Jeff Holmes (hereinafter "Holmes"), suffered on July 27, 2009 while working for defendant/employer, Crawford Machine, Inc. (hereinafter "Crawford Machine").  We have elected to consolidate the cases for oral argument and opinion.  Our discussion will be divided by appellate case number.

**Appellate Case No. 3-11-09**

{¶2} In appellate case no. 3-11-09, plaintiff-appellant/employee, Holmes, appeals the Crawford County Court of Common Pleas' judgment entry finding him entitled to participate in the workers' compensation system for only one of six of his alleged conditions as found by the jury. For the reasons stated herein, we affirm the trial court's judgment in this case.

{¶3} On July 29, 2011, Holmes filed claim no. 09-835696 with the Ohio Bureau of Workers' Compensation (hereinafter "BWC"). (Doc. No. 1, Exs. A & B). The BWC Administrator originally allowed Holmes' claim for "electric current effects" and "sprain left shoulder/arm nos." (Id., Ex. A). However, on August 13, 2009, Crawford Machine appealed, and on October 14, 2009, the District Hearing Officer vacated the Administrator's order and denied the claim. (Id.).

{¶4} On October 19, 2009, Holmes appealed, and, on February 5, 2010, the Staff Hearing Officer vacated the District Hearing Officer's order and allowed Holmes' claim on the following conditions: (1) Left Shoulder Strain; (2) Electrical Shock; (3) Low Back Strain; (4) Left Rotator Cuff Tear; (5) Left Posterior Shoulder Dislocation; and (6) Abrasion Right Fifth Finger. (Id., Ex. B).

{¶5} On March 2, 2010, Crawford Machine appealed, but the Industrial Commission refused the appeal pursuant to R.C. 4123.511(E) on March 10, 2010. (Id., Ex. C).

{¶6} On April 30, 2010, Crawford Machine filed a notice of appeal to the Crawford County Court of Common Pleas pursuant to R.C. 4123.512, which was assigned trial court case no. 10 CV 0221. (Doc. No. 1).

{¶7} On May 26, 2010, Holmes filed his petition and complaint seeking a declaration that he was entitled to participate in the workers' compensation fund. (Doc. No. 4). On June 22, 2010, Crawford Machine filed its answer. (Doc. No. 7).

{¶8} The matter proceeded to jury trial on February 1-3, 2011. (Doc. No. 109). The jury rendered six verdicts, finding that Holmes was *not* entitled to participate in the workers' compensation fund for the following conditions: (1) electrical shock; (2) left shoulder strain; (3) left rotator cuff tear; (4) low back strain; and (5) left posterior shoulder dislocation. (Doc. Nos. 94, 96, 98, 100, 102). However, the jury found that Holmes *was* entitled to participate in the workers' compensation fund for the "abrasion right fifth finger" condition. (Doc. No. 104).

{¶9} On March 2, 2011, Holmes filed a notice of appeal, which was assigned appellate case no. 3-11-05. (Doc. No. 105). On March 21, 2011, however, this Court dismissed it for lack of a final, appealable order. (Doc. No. 108).

{¶10} On March 23, 2011, the trial court filed its judgment entry declaring that Holmes was *not* entitled to participate in the workers' compensation fund for the five conditions mentioned above but *was* allowed to participate in the fund for the condition of "abrasion right fifth finger," as determined by the jury. (Doc. No. 109).

{¶11} On April 19, 2011, Holmes filed a notice of appeal from the trial court's judgment entry, which was assigned appellate case no. 3-11-09. (Doc. No. 114).

{¶12} Holmes now appeals, raising three assignments of error for our review. We elect to discuss Holmes' first and third assignments of error together.

**ASSIGNMENT OF ERROR NO. I**

**THE TRIAL COURT ERRED BY ADMITTING THE REPORTS FROM DONAN ENGINEERING, CARTER ELECTRIC, DR. JONES AND DR. BARKETT INTO EVIDENCE SINCE THE REPORTS ARE HEARSAY AND DO NOT FALL WITHIN ANY HEARSAY EXCEPTION.**

**ASSIGNMENT OF ERROR NO. III**

**THE TRIAL COURT ERRED BY ADMITTING THE REPORTS OF DONAN ENGINEERING, CARTER ELECTRIC, DR. JONES AND DR. BARKETT SINCE THE REPORTS WERE NEEDLESS PRESENTATION OF CUMULATIVE EVIDENCE.**

{¶13} In his first assignment of error, Holmes argues that the trial court erred by admitting the reports of Donan Engineering, Carter Electric, Dr. Jones,

and Dr. Barkett into evidence since those reports were inadmissible hearsay. Specifically, Holmes argues that the reports were not business records under Evid.R. 803(6) since they were letters addressed to either Crawford Machine or defense counsel and prepared for litigation. In his third assignment of error, Holmes argues that the trial court erred by admitting the aforementioned reports since opinion testimony was offered into evidence concerning the reports thereby rendering the reports cumulative evidence.

{¶14} We begin by acknowledging that a trial court has discretion to determine whether to admit or exclude evidence. *Krischbaum v. Dillon* (1991), 58 Ohio St.3d 58, 66, 567 N.E.2d 1291. Therefore, an appellate court will not disturb a trial court's decision on the exclusion or admission of evidence absent an abuse of discretion. Id. An abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.

{¶15} Hearsay evidence is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). The Ohio Rules of Evidence forbid the use of hearsay evidence at trial absent a recognized exception. Evid.R. 802. Evid.R. 803, however sets forth the following exception to the hearsay rule:

> **(6)** *Records of regularly conducted activity.* **A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(1), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.**

"'Evid.R. 803(6) does not preclude the admissibility of opinions or diagnoses contained in medical records or reports as long as they satisfy the foundational authentication requirements of Evid.R. 803(6) and do not violate other evidentiary rules (e.g. R.C. 2317.02(B); Evid.R. 402 and Evid.R. 702).'" *Wasinski v. PECO II, Inc.*, 3d Dist. Nos. 3-08-14, 3-08-16, 2009-Ohio-2615, ¶20, quoting *Smith v. Dillard's Dept. Stores, Inc.*, 8th Dist. No. 75787, 2000-Ohio-2689.

{¶16} Pat Baker, an electrician with Carter Electric, testified that, on or about August 27, 2009, he inspected Acme Machine No. 28 at Crawford Machine. (Feb. 2, 2011 Tr., Vol. II at 306-08). Baker identified defendant's exhibit F as a true and accurate copy of the report he prepared afterwards. (Id. at 317). Baker testified that, based upon his examination of the machine and the statements he collected concerning how the accident allegedly happened, Holmes could not have sustained an electrical shock from the machine. (Id. at 318-19). Baker testified

that Holmes could not have sustained an electrical shock "[b]ecause all the power coming into the machine was through [a] disconnect, and the disconnect was locked open and there was no other power source to the machine." (Id. at 319).

{¶17} Frank Miller, Jr., an electrical engineer with Donan Engineering, testified that, in August 2009, he inspected Acme Machine No. 28 at Crawford Machine at their request after an employee reported being shocked while working on the machine. (Feb. 3, 2011 Tr., Vol. III at 445-47). After examining the machine, Miller concluded that it was properly wired, and that Holmes was not electrically shocked from it. (Id. at 447-48, 479). Miller identified defendant's exhibit M1 as a true and accurate copy of his investigation report. (Id. at 458). Miller identified defendant's exhibit M as a true and accurate copy of the addendum to his earlier report (D's Ex. M1), which was kept in the ordinary course of his business. (Id. at 462). Miller testified that, as he stated in the addendum to his earlier report, Holmes could not have suffered an electrical shock from the machine. (Id. at 463). On cross-examination, Miller testified that Crawford Machine requested that he prepare reports based upon his investigation. (Id. at 466). When asked whether Crawford Machine requested the reports for litigation, Miller responded, "[i]nitially, it was not for litigation purposes. They, basically, wanted to know what is wrong with this machine, if anything at all." (Id.).

**{¶18}** Dr. Jack Jones identified defendant's Exhibit S as a true and accurate copy of the report he prepared following his July 2010 examination of Holmes, which report was kept in the ordinary course of his business. (Feb. 2, 2011 Tr., Vol. II at 330, 332-33). Dr. Jones testified that, prior to his July 2010 examination of Holmes, he had an opportunity to review Holmes' treatment records, subsequent evaluations, surgical records, and physical therapy records. (Id. at 332). Dr. Jones testified that, after the July 2010 examination and his report, he had the opportunity to review: Holmes' medical records related to his two previous workers' compensation claims involving his lower back; a recent MRI of Holmes' lumbar spine; and the reports from Donan Engineering and Carter Electric. (Id. at 333-34). Dr. Jones identified defendant's exhibit T as a true and accurate copy of the addendum to his report, which was kept in the ordinary course of his business and made eleven days after he examined Holmes. (Id. at 334-35). Dr. Jones testified that Holmes did not suffer an electrical shock. (Id. at 360-61). When asked why he had that opinion, Dr. Jones testified:

> **First, the electrical journeyman I guess two days after the injury found no flaws or defects with the machine that could have caused it. The forensic engineer from Donan Engineering found no way or evidence that any kind of arcing or any kind of electrical shock could have been sustained. And the -- there was no elevation in the muscle enzymes a few hours after this injury occurred in the emergency room or for several days thereafter that would suggest that kind of a severe tonic clonic kind of muscle contraction injury.**

On cross-examination, Dr. Jones testified that, in his first report, he did not have an opinion regarding Holmes' left shoulder sprain, electrical shock effects, low back strain, left rotator cuff tear, left posterior shoulder dislocation, or the abrasion, but he did have an opinion concerning those conditions in his second report. (Id. at 392). Dr. Jones testified that, between his first and second reports, he reviewed the reports of Donan Engineering and Carter Electric. (Id.). When asked if he based the opinion found in his second report on these reports, Dr. Jones testified "[t]hat was part of it, yes." (Id.). Dr. Jones testified that, if Holmes did sustain an electrical shock, it could have caused the aforementioned conditions. (Id. at 395).

{¶19} Dr. Robert Barkett, Jr. testified that he has been Holmes' family doctor for the past four years. (Id. at 411-12). Dr. Barkett identified defendant's exhibit X as a true and accurate copy of the report kept in the ordinary course of business, which he prepared after he had an opportunity to review the reports of Donan Engineering and Carter Electric. (Id. at 416-17). Dr. Barkett testified that the Donan Engineering and Carter Electric reports contradicted Holmes' version of how the injury occurred. (Id. at 417-18). Dr. Barkett testified that he rendered his first opinion after reading Dr. Zuesi's and Dr. Novak's reports and the emergency room records, but he had to "reevaluate the situation" after reading the

Donan Engineering and Carter Electric reports. (Id. at 418). Dr. Barkett testified that, when he first saw Holmes, Holmes' "symptoms were absolutely consistent with an electrical injury"; however, his opinion changed after he read the Donan Engineering and Carter Electric reports indicating that Holmes could not have sustained an electrical shock. (Id. at 418-20). On cross-examination, Dr. Barkett testified that his opinion that Holmes did not sustain an electrical shock was based solely upon the Donan Engineering and Carter Electric reports. (Id. at 429). He further testified that his opinion would be that Holmes sustained his injuries as a result of the July 27, 2009 incident if it was discovered that those reports were inaccurate. (Id. at 430).

{¶20} Upon review of the foregoing testimony, we cannot conclude that the trial court abused its discretion by admitting the reports of Donan Engineering (D's Exs. M & M1), Carter Electric (D's Ex. F), Dr. Jones (D's Exs. S & T), and Dr. Barkett (D's Ex. X). With respect to the Donan Engineering reports, Miller, who conducted the forensic analysis of Acme Machine No. 28, authenticated defendant's exhibits M and M1 as true and accurate copies of his reports made shortly after his examination of the machine in question. Miller further testified that the reports were kept in the ordinary course of the business. Nevertheless, Holmes argues that these records were not trustworthy because they were made for the purposes of litigation, citing *Johnson v. Cassens Transport Co.*, 158 Ohio

App.3d 193, 2004-Ohio-4011, 814 N.E.2d 545. In *Johnson*, we determined that a trial court's decision to *exclude* from evidence letters written by the claimant's attending physician to the claimant's counsel in response to counsel's inquiry after litigation had begun was not unreasonable. 2004-Ohio-4011, at ¶19. *Johnson* does not set forth a rule of mandatory exclusion as Holmes would have; rather, it merely affirmed the trial court's discretion in determining that the letters in that case were not admissible under Evid.R. 803(6) because either "the source of information or the method or circumstances of preparation indicate lack of trustworthiness." Furthermore, in this case the reports were not sent to counsel in response to counsel's inquiry after litigation had begun as in *Johnson*; rather, the reports were sent to the employer after the employer hired Donan Engineering to inspect the suspect machine. *Even if* the trial court erred in admitting the reports, the trial court's error was harmless since the reports were merely cumulative of Miller's testimony at trial. See *Johnson*, 2004-Ohio-4011, at ¶23; *State v. Tomlinson* (1986), 33 Ohio App.3d 278, 281, 515 N.E.2d 963 ("where a declarant is examined on the same matters as contained in impermissible hearsay statements and where admission is essentially cumulative, such admission is harmless."). For all these reasons, we cannot conclude that the trial court erred by admitting the Donan Engineering reports into evidence.

**{¶21}** With respect to the Carter Electric report, the trial court's admission of this evidence was harmless error. Although Baker testified that the report was a true and accurate copy of his prepared report, he never actually testified that the report was prepared in the ordinary course of the business as required under Evid.R. 803(6). *Lingo v. Leeper*, 2nd Dist. No. 18865, 2002-Ohio-1205, at *2 ("Although Dr. Shear authenticated the report and its contents, he did not testify that this report is an ordinary part of his business. Thus, the trial court could reasonably conclude that this report is hearsay and it may be excluded."). Nevertheless, the trial court's error in admitting the Carter Electric report was harmless because the report was merely cumulative of Baker's testimony at trial. See *Johnson*, 2004-Ohio-4011, at ¶23; *Tomlinson*, 33 Ohio App.3d at 281.

**{¶22}** We also cannot conclude that the trial court abused its discretion by admitting Dr. Jones' and Dr. Barkett's reports into evidence. Holmes argues that the physician reports were inadmissible under Evid.R. 803(6) because they were essentially letters sent to defense counsel after legal proceedings began. Although the trustworthiness of these reports is more questionable since they were submitted to defense counsel after legal proceedings began similar to the reports in *Johnson*, supra, it was still within the trial court's discretion to allow the reports into evidence. Regardless, any error in the admission of these reports would also be harmless error because the reports were cumulative of Dr. Jones' and Dr. Barkett's

testimony at trial. See *Johnson*, 2004-Ohio-4011, at ¶23; *Tomlinson*, 33 Ohio App.3d at 281.

{¶23} In his third assignment of error, Holmes' argues that the trial court erred by admitting the aforementioned reports because they were cumulative of the testimony presented at trial.

{¶24} Holmes did not object to the admission of the aforementioned reports on the basis that they constituted cumulative evidence; and therefore, Holmes has waived all but plan error on this issue. (Feb. 3, 2011 Tr., Vol. III at 483, 487, 490-91). *Proctor v. Wolber*, 3d Dist. No. 5-01-38, 2002-Ohio-2593, ¶51.   In civil appeals, "the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson* (1997), 79 Ohio St.3d 116, 679 N.E.2d 1099, syllabus.  Holmes has failed to demonstrate that the trial court's admission of the cumulative evidence in this case constitutes civil plain error.

{¶25} Holmes' first and third assignments of error are, therefore, overruled.

### ASSIGNMENT OF ERROR NO. II

**THE TRIAL COURT ERRED BY NOT STRIKING THE TESTIMONY OF DR. JONES AND DR. BARKETT IN VIOLATION OF EVIDENCE RULE 703.**

{¶26} In his second assignment of error, Holmes argues that the trial court erred by failing to strike Dr. Jones' and Dr. Barkett's testimony since their opinions were based upon the erroneously admitted hearsay contained in the Donan Engineering and Carter Electric reports contrary to Evid.R. 703.

{¶27} Evid.R. 703 requires that: "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by the expert or admitted in evidence at the hearing."

{¶28} This argument lacks merit. As Holmes implicitly acknowledges, the Donan Engineering and Carter Electric reports, upon which Dr. Jones and Dr. Barkett relied, *were* admitted into evidence as required under Evid.R. 703. Holmes' argument, however, is that those reports should not have been admitted for the reasons he articulated in his first and third assignments of error; and therefore, Evid.R. 703 was not satisfied. Since we have already determined that the trial court did not commit reversible error by admitting the reports into

evidence, and the reports were, in fact, admitted into evidence, we must also reject Holmes' argument concerning Evid.R. 703.[1]

{¶29} Holmes' third assignment of error is, therefore, overruled.

{¶30} Having found no error prejudicial to Holmes in the particulars assigned and argued herein, we affirm the judgment of the trial court in appellate case no. 3-11-09 (trial court case no. 10 CV 0221).

**Appellate Case No. 3-11-10**

{¶31} In appellate case no. 3-11-10, plaintiff-appellant/employee, Holmes, appeals the Crawford County Court of Common Pleas' judgment entry dismissing his subsequent complaint and petition to participate in the workers' compensation fund for additional allowances related to the same July 27, 2009 incident.  For the reasons stated herein, we reverse the trial court's judgment in this case.

{¶32} On April 22, 2009, Holmes filed a motion with the BWC seeking the following additional allowances arising from his July 27, 2009 workplace injury: (1) acute glenoid labral tear left shoulder; (2) impingement syndrome left shoulder; (3) acute tendinosis left shoulder; and (4) substantial aggravation of pre-existing condition—osteoarthritis left shoulder. (Doc. No. 1, Ex. A).

{¶33} On August 18, 2010, the District Hearing Officer allowed all the additional claims. (Id.).  On September 2, 2010, Crawford Machine appealed, and,

---

[1] In fact, at oral argument, Holmes conceded that the success of his second assignment of error was contingent upon the success of his first assignment of error.

on October 21, 2010, a Staff Hearing Officer affirmed. (Id., Ex. B). On November 3, 2010, Crawford Machine appealed again, but, on November 10, 2010, the Industrial Commission refused the appeal. (Id., Ex. C).

{¶34} On January 3, 2011, Crawford Machine filed a notice of appeal with the Crawford County Court of Common Pleas pursuant to R.C. 4123.512. (Doc. No. 1). The matter was assigned trial court case no. 11 CV 0003. (Id.).

{¶35} On February 2, 2011, Holmes filed a complaint and petition seeking a declaration of his right to participate in the workers' compensation fund for the four additional allowances. (Doc. No. 5).

{¶36} On March 10, 2011, Crawford Machine filed a Civ.R. 12(B)(6) motion to dismiss the complaint and petition, and the trial court subsequently granted the motion to dismiss on April 14, 2011. (Doc. Nos. 8, 11).

{¶37} On May 11, 2011, Holmes filed a notice of appeal from the trial court's judgment, which was assigned appellate case no. 3-11-10. (Doc. No. 13). This case was originally placed on our accelerated calendar, but we have elected, pursuant to Loc.R. 12(5), to issue a full opinion in lieu of a summary journal entry.

{¶38} Holmes now appeals raising one assignment of error for our review.

**ASSIGNMENT OF ERROR**

**THE LOWER COURT ERRED IN GRANTING THE DEFENDANT-EMPLOYER'S MOTION TO DISMISS AS**

-17-

**THERE EXISTS A SET OF FACTS THAT WARRANT PLAINTIFF-APPELLANT RECOVERING**.

**{¶39}** In his sole assignment of error, Holmes argues that the trial court erred by dismissing his complaint under Civ.R. 12(B)(6) because he stated a claim of entitlement to participate in the workers' compensation fund.

**{¶40}** "A motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint." *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.* (1992), 65 Ohio St.3d 545, 548, 605 N.E.2d 378, citing *Assn. for Defense of Washington Local School Dist. v. Kiger* (1989), 42 Ohio St.3d 116, 117, 537 N.E.2d 1292. See, also, *Davis v. Widman*, 184 Ohio App.3d 705, 2009-Ohio-5430, 922 N.E.2d 272, ¶10. For that reason, a trial court may not rely upon evidence or allegations outside the complaint when ruling on a Civ.R. 12(B)(6) motion. *State ex rel. Fuqua v. Alexander* (1997), 79 Ohio St.3d 206, 207, 680 N.E.2d 985.

**{¶41}** To sustain a Civ.R. 12(B)(6) dismissal, "it must appear beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *LeRoy v. Allen, Yurasek, & Merklin*, 114 Ohio St.3d 323, 2007-Ohio-3608, 872 N.E.2d 254, ¶14, citing *Doe v. Archdiocese of Cincinnati*, 109 Ohio St.3d 491, 2006-Ohio-2625, 849 N.E.2d 268, ¶11. Additionally, the complaint's allegations must be construed as true, and any reasonable inferences

must be construed in the nonmoving party's favor. Id., citing *Maitland v. Ford Motor Co.*, 103 Ohio St.3d 463, 2004-Ohio-5717, 816 N.E.2d 1061, ¶11; *Kenty v. Transamerica Premium Ins. Co.* (1995), 72 Ohio St.3d 415, 418, 650 N.E.2d 863.

{¶42} This court reviews a trial court's decision to grant or deny a Civ.R. 12(B)(6) motion de novo. *RMW Ventures, L.L.C. v. Stover Family Invest., L.L.C.*, 161 Ohio App.3d 819, 2005-Ohio-3226, 832 N.E.2d 118, ¶8, citing *Hunt v. Marksman Prod.* (1995), 101 Ohio App.3d 760, 762, 656 N.E.2d 726. As such, we may substitute, without deference, our judgment for that of the trial court. *Castlebrook, Ltd. v. Dayton Properties Ltd. Partnership* (1992), 78 Ohio App.3d 340, 346, 604 N.E.2d 808.

{¶43} Crawford Machine, in its motion to dismiss, alleged that Holmes' "[c]omplaint fails to state a claim upon which relief can be granted given that it has already been determined that [he] is not entitled to participate in the workers' compensation fund for any of the left shoulder conditions in his underlying workers' compensation claim." (Doc. No. 8). Crawford Machine, in its response to Holmes' brief in opposition, stated: "[i]t has already been determined by a jury in this court that [Holmes] did not sustain an electrical shock in the course and scope of his employment with the Defendant." (Doc. No. 10). Attached to Crawford Machine's motion to dismiss, and in support thereof, were the jury verdict forms in trial court case no. 10 CV 0221. (Doc. No. 8, attached).

**{¶44}** Although the word "res judicata" never actually appears in the defendant's motion or response, Crawford Machine confirmed that res judicata was the basis of its Civ.R. 12(B)(6) motion at oral argument.  Civ.R. 12(B) does not list res judicata among the defenses that may be raised by a motion to dismiss, and therefore, a defendant may not raise res judicata in a Civ.R. 12(B) motion. *Hillman v. Edwards*, 10th Dist. No. 10AP-950, 2011-Ohio-2677, ¶14, citing *State ex rel. Freeman v. Morris* (1991), 62 Ohio St.3d 107, 109, 579 N.E.2d 702.  "The necessity of relying on matters outside the pleadings to establish res judicata also precludes the use of a Civ.R. 12(B)(6) motion to dismiss for raising that defense." Id., citing *Musa v. Gillett Communications, Inc.* (1997), 119 Ohio App.3d 673, 680, 696 N.E.2d 227.

**{¶45}** Read in a light most favorable to him, Holmes' petition stated a claim for entitlement to participate in the workers' compensation fund.  Holmes' petition alleged, in pertinent part, that: (1) Crawford Machine was amenable to the Workers' Compensation Act; and (2) on July 27, 2009, he sustained an injuries to his left shoulder, low back, and right hand arising out of and in the course of his employment with Crawford Machine. (Doc. No. 5).  Reviewing the record in light of Crawford Machine's oral argument before this Court, it is clear that the trial court dismissed Holmes' complaint under Civ.R. 12(B)(6) based upon res judicata, which was erroneous.

**{¶46}** Holmes' sole assignment of error is, therefore, sustained.

**{¶47}** Having found error prejudicial to Holmes in the particulars assigned and argued herein, we reverse the judgment of the trial court in appellate case no. 3-11-10 (trial court case no. 11 CV 0003).

### Appellate Case No. 3-11-12

**{¶48}** In appellate case no. 3-11-12, defendant-appellant/employer, Crawford Machine, appeals the Crawford County Court of Common Pleas' judgment entry granting plaintiff-appellee/employee, Holmes, attorney's fees and costs associated with the prosecution of his workers' compensation petition in appellate case no. 3-11-09 (trial court case no. 10 CV 0221). For the reasons stated herein, we reverse the trial court's judgment in this case.

**{¶49}** On April 5, 2011, after the jury in trial court case no. 10 CV 0221 determined that he was entitled to participate in the workers' compensation fund for his right fifth finger abrasion, Holmes filed a motion for attorney's fees and costs. (Doc. No. 113). On April 19, 2011, Crawford Machine filed a brief in opposition. (Doc. No. 117).

**{¶50}** On May 11, 2011, without holding a hearing and in a single-paragraph entry, the trial court awarded Holmes $4,200.00 in attorney's fees, the statutory maximum, and $7,551.23 in costs, for a total of $11,751.23. (Doc. No. 118).

**{¶51}** On May 25, 2011, Crawford Machine filed a motion for reconsideration, and on June 10, 2011, Crawford Machine filed a notice of appeal. (Doc. Nos. 119, 120). This appeal was assigned appellate case no. 3-11-12.

**{¶52}** Crawford Machine now appeals raising one assignment of error.

### ASSIGNMENT OF ERROR

**THE TRIAL COURT ERRED IN GRANTING COSTS AND ATTORNEY FEES TO HOLMES.**

**{¶53}** In their sole assignment of error, Crawford Machine argues that the trial court erred by taxing it attorney's fees and costs under R.C. 4123.512(F). Specifically, Crawford Machine argues that Holmes is not entitled to reimbursement for attorney's fees and costs associated with the conditions for which the jury determined he was ineligible to participate in the workers' compensation fund; namely, the conditions of: "electrical shock," "left shoulder strain," "left rotator cuff tear," "low back strain," and "left posterior shoulder dislocation." In support of its argument, Crawford Machine cites this Court's decision in *Booher v. Honda of Am. Mfg., Inc.* (1996), 113 Ohio App.3d 798, 682 N.E.2d 657, appeal denied in *Booher v. Honda of Am. Mfg., Inc.*, (1997), 77 Ohio St.3d 1525, 674 N.E.2d 376.

**{¶54}** Our inquiry begins with the plain language of the statutory authority at issue. *Iams v. DaimlerChrysler Corp.*, 174 Ohio App.3d 537, 2007-Ohio-6709,

883 N.E.2d 466, ¶17. "It is a court's responsibility to enforce the literal language of a statute wherever possible; to interpret, not legislate. Unless a statute is ambiguous, the court must give effect to its plain meaning." *Ohio Bur. of Workers' Comp. v. Dernier*, 6th Dist. No. L-10-1126, 2011-Ohio-150, ¶26, citing *Cablevision of the Midwest, Inc. v. Gross* (1994), 70 Ohio St.3d 541, 544, 639 N.E.2d 1154; R.C. 1.49. However, if the statute is ambiguous—meaning it is susceptible to more than one reasonable interpretation—the court may consider several factors, "including the object sought to be obtained, circumstances under which the statute was enacted, the legislative history, and the consequences of a particular construction." *Bailey v. Republic Engineered Steels, Inc.* (2001), 91 Ohio St.3d 38, 40, 741 N.E.2d 121. The interpretation of statutory authority is a question of law requiring de novo review. *Riedel v. Consol. Rail Corp.*, 125 Ohio St.3d 358, 2010-Ohio-1926, 928 N.E.2d 448, ¶6, citations omitted.

{¶55} "Courts must liberally construe the workers' compensation laws in favor of employees." *Valentine v. PPG Industries, Inc.*, 158 Ohio App.3d 615, 2004-Ohio-4521, 821 N.E.2d 580, ¶11, citing R.C. 4123.95; *Bailey*, 91 Ohio St.3d at 40. A liberal construction of the workers' compensation laws requires courts to adopt "the most comprehensive meaning of the statutory terms." Id., citing *Bailey*, 91 Ohio St.3d at 40. The Ohio Supreme Court in *Bailey* stated:

> **A liberal construction has been defined as giving 'generously all that the statute authorizes,' and 'adopting the most comprehensive meaning of the statutory terms in order to accomplish the aims of the Act and to advance its purpose, with all reasonable doubts resolved in favor of the applicability of the statute to the particular case. Interpretation and construction should not result in a decision so technical or narrow as to defeat the compensatory objective of the Act.'**

91 Ohio St.3d at 40, quoting Fulton, Ohio Workers' Compensation Law (2 Ed.1998) 9, Section 1.7.  "A liberal construction directive, however, does not empower us to read into a statute something that cannot reasonably be implied from the statute's language." *State ex rel. Williams v. Colasurd* (1995), 71 Ohio St.3d 642, 644, 646 N.E.2d 830, citing *Szekely v. Young* (1963), 174 Ohio St. 213, 188 N.E.2d 424, paragraph two of the syllabus.  Furthermore, the liberal construction directive "is supposed to favor only deserving employees." Fulton, Ohio Workers' Compensation Law (3 Ed.2008) 10, Section 1.7, citing *State ex rel. Maurer v. Industrial Com'n of Ohio* (1989), 47 Ohio St.3d 62, 547 N.E.2d 979.

{¶56} R.C. 4123.512(D) and (F) govern a claimant's recovery of attorney's fees and costs of an appeal to the trial court.  R.C. 4123.512(D) provides for the payment of filed physicians' depositions and provides:

> **Any party may file with the clerk prior to the trial of the action a deposition of any physician taken in accordance with the provisions of the Revised Code, which deposition may be read in the trial of the action even though the physician is a resident of or subject to service in the county in which the trial is had. The bureau of workers' compensation shall pay the cost of the**

**stenographic deposition filed in court and of copies of the stenographic deposition for each party from the surplus fund and charge the costs thereof against the unsuccessful party if the claimant's right to participate or continue to participate is finally sustained or established in the appeal.**

Consequently, under R.C. 4123.512(D), the claimant is entitled to reimbursement for the costs of his or her physician's deposition if the deposition is filed with the trial court, regardless of the outcome of the claimant's appeal. *Wasinski*, 2010-Ohio-4293, at ¶14, citing *Kilgore v. Chrysler Corp* (2001), 92 Ohio St.3d 184, 186, 749 N.E.2d 267. Practically speaking, "[i]f the claimant loses, the reimbursement comes from the Surplus Fund; if the claimant wins, reimbursement is charged against the party challenging the claimant's eligibility." *Kilgore*, 92 Ohio St.3d at 186. While R.C. 4123.512(D) allows reimbursement regardless of the claimant's success, it includes "only the stenographic costs, which include the cost of the court reporter attending the deposition and the fee for producing the original and copies that are required, but does not include the cost of the physician's fee." *Colasurd*, 71 Ohio St.3d at 644, quoting *Perry v. Connor* (1983), 8 Ohio App.3d 283, 456 N.E.2d 1340. Additionally, the deposition must be that of "any physician taken in accordance with the provisions of the Revised Code which may be read in the trial of the action * * *." R.C. 4123.512(D); *Sturgill v. Elder Beerman Stores, Corp.*, 10th Dist. No. 02CA0062, 2003-Ohio-52, ¶9.

"Presumably, the testimony of non-physician experts is not covered by R.C. 4123.512(D)." *Sturgill,* 2003-Ohio-52, at ¶9.

{¶57} R.C. 4123.512(F), on the other hand, provides:

**The cost of any legal proceedings authorized by this section, including an attorney's fee to the claimant's attorney to be fixed by the trial judge, based upon the effort expended,** *in the event the claimant's right to participate or to continue to participate in the fund is established upon the final determination of an appeal*, **shall be taxed against the employer or the commission if the commission or the administrator rather than the employer contested the right of the claimant to participate in the fund. The attorney's fee shall not exceed forty-two hundred dollars.**

(Emphasis added). According to its plain language, then, the award of attorney's fees and "[t]he cost of any legal proceedings" under R.C. 4123.512(F) "shall" be taxed against the party opposing the claimant's right to participate in the workers' compensation fund "in the event the claimant's right to participate or to continue to participate in the fund is established upon the final determination of an appeal." By using the term "shall," the General Assembly made mandatory the trial court's duty to tax costs to the applicable party once the claimant established his/her right to participate or continue to participate in the fund. See *Campbell v. Big Bear Stores, Inc.* (Nov. 25, 1996), 12th Dist. No. CA96-07-066, at *1, citing *Alford v. Republic Steel Corp.* (1983), 12 Ohio App.3d 145, 146, 467 N.E.2d 567 (attorney's fees under R.C. 4123.512(F) are mandatory). See, also, *State ex rel. Adams v. Aluchem, Inc.*, 104 Ohio St.3d 640, 2004-Ohio-6891, 821 N.E.2d 547,

¶12, citing *Ohio Dept. of Liquor Control v. Sons of Italy Lodge 0917* (1992), 65 Ohio St.3d 532, 534, 605 N.E.2d 368 ("when it is used in a statute, the word 'shall' denotes that compliance with the commands of that statute is *mandatory*."). According to the statute's plain language, whether the trial court must tax the cost of the legal proceedings and attorney's fees to the party opposing the claimant's right to participate in the fund is only contingent upon the claimant establishing his "right to participate or continue to participate in the fund." Therefore, according to R.C. 4123.512(F)'s plain language, the trial court's mandatory duty to access costs and attorney's fees is *not* contingent upon how many claims/conditions the claimant is successful upon at trial.

{¶58} Our interpretation of R.C. 4123.512(F)'s plain language is consistent with precedent.[2] In *McGeehan v. State Bureau of Workers' Compensation* the claimant filed a claim with the BWC for three conditions: (1) lumbar strain/sprain; (2) aggravation of pre-existing lumbar degenerative disc disease; and (3) lumbar instability. (Dec. 28, 2000), 10th Dist. No. 00AP-648, at *1. Following discovery, but prior to trial, the employer conceded that the BWC had properly allowed the lumbar strain/sprain claim. Id. A jury trial was conducted on the two remaining

---

[2] The relevant case law only discusses the trial court's discretion in taxing costs. Nevertheless, we find the case law also applicable to attorney's fees since both costs and attorney's fees are governed under the same statute, and the trial court's duty to tax both are triggered by the same statutory language, i.e. "in the event the claimant's right to participate or to continue to participate in the fund is established upon the final determination of an appeal."

conditions, and the jury determined that the claimant was *not* entitled to participate in the workers' compensation fund for those conditions. Id.  Thereafter, the trial court entered judgment finding that the claimant was entitled to participate in the workers' compensation fund for lumbar sprain/strain only, as previously conceded by the employer prior to trial. Id.  Following that judgment entry, the claimant filed a motion for attorney's fees and costs pursuant to R.C. 4123.512(D) and (F). Id.  The trial court denied the motion, citing case law holding that the claimant must be "successful" to be awarded attorney's fees and costs. Id. at *1-2.  The trial court determined that the claimant was not "successful" since he did not prevail on the two conditions presented to the jury. Id.  The claimant then appealed. Id.

{¶59} On appeal, the claimant argued that the trial court erred by denying his motion for costs under R.C. 4123.512(F). Id.  The Court of Appeals ultimately agreed.   The Appellate Court began its analysis by observing that R.C. 4123.512(F) does not use the term "successful," though courts interpreting the statute have required the claimant to be so in order to obtain attorney's fees and costs. Id. at *2.  The Court continued:

> **To the extent, however, that courts have so interpreted the statute, they require only that the claimant be successful in either acquiring or maintaining a right to participate in the workers' compensation fund. * * * Thus a "successful" claimant is one that is allowed to participate upon final determination by the court of common pleas. As noted above, the trial court's judgment entry unequivocally stated that plaintiff is entitled to**

> **participate. Consequently, plaintiff is entitled to fees under R.C. 4123.512(F).**

Id. Therefore, the Tenth District determined that the trial court erred by refusing to award the claimant attorney's fees and costs under R.C. 4123.512(F) since the trial court had determined the claimant was entitled to participate in the workers' compensation fund for lumbar sprain/strain, even though that condition was never submitted to the jury. Id. at *3.

{¶60} A few years later the Tenth District relied upon *McGeehan* to specifically conclude that a claimant was entitled to recover costs related to his unsuccessful claims if the claimant prevailed on at least one claim. *Hollar v. Pleasant Twp.*, 10th Dist. No. 03AP-250, 2003-Ohio-6827. In that case, the claimant had a previously allowed claim for lumbar strain. Id. at ¶1. The claimant filed a motion requesting that the claim be additionally allowed for: herniated disc at L5-S1 and aggravation of pre-existing degenerative disc disease at L5-S1. Id. A jury ultimately determined that the claimant was entitled to participate in the workers' compensation fund for the aggravation condition but not for the herniated disc. Id. The trial court subsequently awarded the claimant attorney's fees and costs. Id. The employer then appealed. Id.

{¶61} On appeal, the employer argued that the claimant was not entitled to the costs associated with the physician who testified regarding the herniated disc

condition since the claimant was unsuccessful on that claim. Id. at ¶20. In support of its argument, the employer, like Crawford Machine herein, cited this Court's decision in *Booher*, 113 Ohio App.3d 798. Id. at ¶18. The Tenth District distinguished *Booher* on the basis that the trial court in *Booher*, unlike the trial court in its case, *denied* the claimant costs associated with her unsuccessful herniated disc claim. Id. The Tenth District then concluded: "that pursuant to *McGeehan*, [the claimant] can recover his costs because he was successful with at least one of his claims and we do not find an abuse of discretion by the trial court in awarding such." Id. at ¶20.

{¶62} In *Azbell v. Newark Group, Inc.*, the Fifth District concluded that the trial court erred by denying the claimant the cost of an expert witness fee under R.C. 4123.512(F) where: (1) the claimant prevailed upon one of his four alleged claims/conditions at trial; and (2) the expert witness was retained and deposed for all four claims/conditions. 5th Dist. No. 07 CA 00001, 2008-Ohio-2639. The employer in *Azbell*, citing this Court's decision in *Booher*, argued that costs should be apportioned according to the parties' rate of success at trial, i.e. the claimant was only entitled to one-fourth (1/4) of the costs since the claimant only prevailed on one of four claims/conditions at trial. 2008-Ohio-2639, at ¶40. The Fifth District disagreed with the employer and distinguished *Booher* from its case on the basis that the costs in *Booher* were easily apportioned between two expert

witnesses, one who testified concerning the successful claim/condition and one who testified concerning the unsuccessful claim/condition, unlike its case where one expert witness testified concerning all the claims/conditions, some of which were successful and others which were not. Id. at ¶¶41-42. The Fifth District ultimately concluded that the claimant was a "successful claimant" under R.C. 4123.512(F) since he prevailed on *one* of his claims/conditions; and therefore, the trial court abused its discretion by failing to award the claimant the expert witness' fee as costs under the statute. Id. at ¶43.

{¶63} Although R.C. 4123.512(F)'s plain language and prior precedent indicate that the trial court has a *mandatory* duty to tax attorney's fees and costs to the opposing party once the claimant's right to participate or continue to participate in the fund is established and that duty is *not* contingent upon the number of claims/conditions upon which the claimant prevails at trial, the Court of Appeals has recognized that trial courts have discretion in awarding attorney's fees and costs under R.C. 4123.512(F). *Wasinski*, 2010-Ohio-4293, at ¶13, citations omitted. Since the statute plainly indicates that a trial court's duty to tax attorney's fees and costs is *mandatory*, a trial court's discretion in awarding attorney's fees and costs under R.C. 4123.512(F) must be in determining the *extent and amount* of the attorney's fees and costs awarded. *Dean v. Conrad* (1999), 134 Ohio App.3d 367, 372, 731 N.E.2d 212 ("The amount to be awarded

and whether the testimony was reasonably necessary rests in the trial court's discretion."). See, also, Fulton at 516, Section 12.7, citing *Moore v. General Motors Corp.* (1985), 18 Ohio St.3d 259, 480 N.E.2d 1101 (A trial court may limit the award of costs for expert witnesses to those whose testimony was reasonably necessary to the successful prosecution of the claimant's appeal).

{¶64} This Court's decision in *Booher* merely affirmed the trial court's discretion in determining the extent and amount of costs under R.C. 4123.512(F). 113 Ohio App.3d 798. In that case, the claimant presented two conditions to the jury: (1) lumbar sprain; and (2) herniated disc. *Booher*, 113 Ohio App.3d at 799-800. The jury found that the claimant was entitled to participate in the workers' compensation fund for the lumbar sprain but not entitled to participate for the herniated disc. Id. at 800. After trial, the claimant moved for attorney's fees, deposition costs, and expert witness fees. Id. The trial court held a hearing on the motion and, thereafter, granted the motion in part and denied it in part. Id.; Id. at 804. After reviewing the trial court's judgment entry and the transcript of the hearing, we concluded that the trial court did not abuse its discretion by denying the claimant the costs of several physician depositions and expert witness fees because those costs related to the claimant's unsuccessful herniated disc claim. Id. at 804. Since the deposition costs and expert witness fees in *Booher* were strictly related to the claimant's unsuccessful herniated disc claim/condition, we

concluded that the trial court did not abuse its discretion by *denying* those costs. 113 Ohio App.3d at 803-04.

{¶65} *Booher* does not stand for the proposition that a trial court *necessarily* abuses its discretion by *awarding* such costs as Crawford Machine argues. Rather, *Booher* stands for the proposition that a trial court, exercising its discretion in determining the extent and amount of costs to tax the opposing party under R.C. 4123.512(F), *should* consider the fact that a claimant prevailed upon some but not all of his/her claims/conditions where consideration of the same is both equitable and practicable. The trial court's apportionment of costs in *Booher* was equitable since it only awarded the claimant the costs associated with her successful lumbar sprain claim/condition. 113 Ohio App.3d at 803-04. The trial court's apportionment of costs in *Booher* was practicable because the costs were easily apportioned by which expert witnesses testified to the successful lumbar sprain claim/condition and which expert witnesses testified to the unsuccessful herniated disc claim/condition. *Azbell*, 2008-Ohio-2639, at ¶¶41-42.

{¶66} While trial courts retain discretion in determining the extent and amount of attorney's fees and costs under R.C. 4123.512(F), their discretion is not unlimited, but rather, is subject to review for an abuse of discretion. *Wasinski*, 2010-Ohio-4293, at ¶13; *Ruta v. Breckenridge-Remy Co.* (July 13, 1979), 6th Dist. No. E-78-49, at *1, citing *State ex rel. Steinkamp v. Davis* (1899), 10 Ohio C.D.

203, 18 Ohio C.C. 479, 1899 WL 657 (costs under Civ.R. 54(D)). An abuse of discretion is more than an error of judgment; rather, it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219.

{¶67} Since the Ohio Supreme Court has significantly expanded the types of costs that trial courts may award under R.C. 4123.512(F), trial courts should be vigilant in exercising their discretion in determining the extent and amount of costs awarded. *Moore*, 18 Ohio St.3d at 262 (expert witness deposition fee); *Kilgore*, 92 Ohio St.3d 184 (attorney's travel expenses in taking the deposition of an expert); *Cave v. Conrad* (2002), 94 Ohio St.3d 299, 301, 762 N.E.2d 991 (videotaped deposition expenses); *Schuller v. United States Steel Corp.*, 103 Ohio St.3d 157, 2004-Ohio-4753, 814 N.E.2d 857 (expert witness's fee for live in-court testimony). On the one hand, R.C. 4123.512(F) was "'designed to minimize the actual expense incurred by an injured employee who establishes his or her right to participate in the fund.'" *Cave*, 94 Ohio St.3d at 301, quoting *Moore*, 18 Ohio St.3d at 261-62. On the other hand, R.C. 4123.512(F) does not allow reimbursement for the claimant's attorney's everyday costs of doing business; only "costs bearing a direct relation to a claimant's appeal that lawyers traditionally charge to clients and that also have a proportionally serious impact on a claimant's award." *Kilgore*, 92 Ohio St.3d at 187-88. Furthermore, our

construction of the workers' compensation laws "is supposed to favor only deserving employees." Fulton at 10, Section 1.7, citing *Maurer*, 47 Ohio St.3d 62.

{¶68} With the applicable rules of law and precedent set forth, we now address Crawford Machine's arguments with respect to the particular fee or cost at issue.

### 1. Dr. Zuesi's Expert Witness Fee and Video Deposition

{¶69} Holmes moved the trial court to award him Dr. Zuesi's expert witness fee and costs associated with Dr. Zuesi's video deposition. (Doc. No. 113). It is unclear from Holmes' motion whether he sought the cost of Dr. Zuesi's video deposition under R.C. 4123.512(D) or (F).[3] (Id.). As Crawford Machine argues, the trial court was not permitted to award both the cost of the Dr. Zuesi's deposition transcript and deposition video under R.C. 4123.512(D). *George v. Ohio Bur. of Workers' Comp.* (1997), 120 Ohio App.3d 106, 107, 696 N.E.2d 1101, citing *Colasurd*, 71 Ohio St.3d 642. Nevertheless, at oral argument, Crawford Machine conceded that the trial court properly taxed it with the cost of Dr. Zuesi's video deposition so we need not address this issue further. Consequently, the only issue left is whether the trial court abused its discretion by

---

[3] In *Breidenbach v. Conrad* (1997), 122 Ohio App.3d 640, 644-45, 702 N.E.2d 509, this Court stated that a claimant could not recover video deposition costs under R.C. 4123.512(F); however, our decision in *Breidenbach* was effectively overruled by the Ohio Supreme Court's decision in *Cave v. Conrad* (2002), 94 Ohio St.3d 299, 301, 762 N.E.2d 991.

taxing Crawford Machine with Dr. Zuesi's expert witness fee under R.C. 4123.512(F).

**{¶70}** When asked if he examined Holmes' right fifth finger, Dr. Zuesi testified, "I did not document that I ever examined his right fifth finger * * * [s]o the answer would be no." (Zuesi Depo. at 32). When asked if he could render an opinion on the five alleged conditions, Dr. Zuesi responded, "[w]ell, I can't say anything about the abrasion of the right fifth finger." (Id. at 37). Therefore, Dr. Zuesi's testimony was strictly related to the four conditions upon which Holmes failed to prevail at trial. As such, it was equitable and practicable for the trial court not to tax Crawford Machine with Dr. Zuesi's expert witness fee under R.C 4123.512(F) since that cost was strictly related to Holmes' unsuccessful conditions and could have been easily excluded. *Booher*, 113 Ohio App.3d at 804; *Azbell*, 2008-Ohio-2639, at ¶¶41-42.

**{¶71}** The trial court's decision to tax Crawford Machine with Dr. Zuesi's expert witness fee ($1,600.00) was especially unreasonable in light of Holmes' minimal injury. The jury found that Holmes was entitled to participate in the workers' compensation fund for an "abrasion" to his right fifth (pinky) finger. (Doc. No. 103). Dr. Zuesi testified that an "abrasion" occurs when "the epidermis is breached so that there's some bleeding coming either from the lower dermal layers or sometimes even just under the surface of the skin. That would truly be a

skin avulsion but if it were minor it would probably fall under the category of abrasion. It's non-suturable." (Zuesi Depo. at 14-15). The evidence at trial demonstrated that Holmes' pinky finger had a "small skinned spot on the knuckle," which was treated with a bandage by a Crawford Machine safety coordinator who had no medical training. (D's Ex. E, E1); (Joint Ex. 1); (Feb. 1, 2011 Tr., Vol. I, at150, 195-98). It is also noteworthy that the trial court did not hold a hearing before issuing its single-paragraph judgment entry taxing Crawford Machine with all of Holmes' requested costs. (May 11, 2011 JE, Doc. No. 118). See *Perry v. LTV Steel Co.* (1992), 84 Ohio App.3d 670, 680, 618 N.E.2d 179 (discussing the necessity of a hearing to determine attorney's fees). For all these reasons, we conclude that the trial court's decision to tax Crawford Machine with Dr. Zuesi's expert witness fee was unreasonable.

### 2. Stenographer at Dr. Zuesi's Deposition

{¶72} Holmes also requested the cost of attendance of a court reporter (stenographer) at Dr. Zuesi's deposition pursuant to R.C. 4123.512(D). (Doc. No. 113). Crawford Machine argues that this cost is only recoverable under R.C. 4123.512(F) and should not have been awarded for the same reasons it offered above. Since the cost of the deposition under R.C. 4123.512(D) includes the cost of the stenographer, we must reject Crawford Machine's argument as to this cost. *Colasurd*, 71 Ohio St.3d at 644, quoting *Perry*, 8 Ohio App.3d 283.

### 3. Lay Witness' Depositions

**{¶73}** In his motion for costs, Holmes moved the trial court to award costs associated with the depositions of six lay witnesses pursuant to R.C. 4123.512(D). (Doc. No. 113). R.C. 4123.512(D), however, only allows for the costs of filed *physician* depositions, not lay witness depositions. *McGuire v. Mayfield* (Dec. 9, 1991), 3d Dist. Nos. 1-90-83, 1-90-88, at *3 (interpreting former, analogous R.C. 4123.519(C)); *Evans v. TNT Holland Motor Express* (July 10, 1997), 8th Dist. Nos. 71391, 71516, at *7; *Talmon v. Quick Air Freight, Inc.* (Oct. 5, 1995), 8th Dist. No. 68879, at *2. See, also, *Sturgill*, 2003-Ohio-52, at ¶9 ("Presumably, the testimony of non-physician experts is not covered by R.C. 4123.512(D)."). Therefore, the trial court erred by ordering the payment of these costs under R.C. 4123.512(D). Upon remand, the trial court may consider the reasonableness of taxing Crawford Machine with these costs under R.C. 4123.512(F).

### 4. Filing Fees, Fed-Ex Postage, and Exhibit Boards

**{¶74}** In his motion for costs, Holmes moved the trial court to award costs associated with filing fees, Fed-Ex postage, and trial exhibits boards pursuant to R.C. 4123.512(D). (Doc. No. 113). These costs are not permitted under R.C. 4123.512(D), and it was error for the trial court to award them as costs under this section. Upon remand, the trial court may consider the reasonableness of taxing Crawford Machine with these costs under R.C. 4123.512(F).

### 5. Travel Costs and Hotel Expenses

**{¶75}** In his motion for costs, Holmes moved the trial court to award him his attorney's travel costs to and from the lay witness depositions, Dr. Zuesi's deposition, and trial. (Doc. No. 113). Holmes also moved the trial court to award him his attorney's lodging costs for attending trial. (Id.).

**{¶76}** We find no abuse of discretion with regard to the trial court's decision to tax Crawford Machine with Holmes' attorney's travel costs to and from the depositions of the lay witnesses under R.C. 4123.512(F) so long as those depositions were not strictly related to Holmes' unsuccessful claims/conditions. See *Kilgore*, 94 Ohio St.3d 184, syllabus. However, the trial court's decision to tax Crawford Machine with Holmes' attorney's travel costs to attend Dr. Zuesi's deposition is unreasonable under R.C. 4123.512(F) since Dr. Zuesi's testimony was strictly related to Holmes' unsuccessful claims/conditions and that cost was easily excluded from the total costs. Finally, we find the trial court abused its discretion by taxing Crawford Machine with Holmes' attorney's travel costs to and from trial and lodging costs for trial, because those costs were "everyday costs of doing business," not directly related to the claimant's claim, and therefore, not reimbursable under R.C. 4123.512(F). *Wasinski*, 2010-Ohio-4293, at ¶¶21-23, citing *Kilgore*, 92 Ohio St.3d at 188.

**6.   Attorney's Fees**

**{¶77}** In his motion for attorney's fees, Holmes stated, "[b]ecause of the amount of time that Plaintiff's Counsel had to spend on this court case, Plaintiff's Counsel is entitled to the full $4,200.00 in fees as allowed by O.R.C. § 4123.512(F)." (Doc. No. 113).  No affidavit, time sheets, or other supporting documentation was submitted demonstrating the reasonableness of $4,200.00 in attorney's fees. (Id.).  The trial court awarded Holmes the statutory maximum of $4,200.00 in attorney's fees without holding a hearing and in a single-paragraph entry. (May 11, 2011 JE, Doc. No. 118).

**{¶78}** When presented with a similar set of facts, the Court of Appeals for the Sixth Appellate District concluded that the trial court's award of the statutory maximum fee was arbitrary. *Lybarger v. Burma Farms, Inc.* (Feb. 19, 1993), 6th Dist. No. H-82-033.  The Court in *Lybarger* reasoned as follows:

> **In the case at bar, the trial court ordered appellant to pay the maximum allowable attorney fees, $2,500, even though no evidence had been presented as to the amount of attorney time expended, the attorney's hourly rate, or the reasonableness of such efforts. The award of attorney fees is for the purpose of making the claimant whole, not for the purpose of punishing the unsuccessful appellant. The burden of proving the amount and reasonableness of such fees is upon the party claiming a right to such an award. Absent evidence of record concerning "efforts expended", we can only conclude that the trial court's decision to award the maximum allowable fee was arbitrary.**

We agree with Court's analysis in *Lybarger* and conclude that the trial court's decision to tax Crawford Machine the statutory maximum amount of attorney's fees without any documentation evidencing the "effort expended" by trial counsel was an abuse of its discretion.

{¶79} Furthermore, the trial court should have held a hearing to determine the appropriate amount of attorney's fees to tax Crawford Machine.  We concur with the Court of Appeals in *Perry v. LTV Steel Co.* on the necessity of an evidentiary hearing to determine attorney's fees (and costs):

> **The need for an evidentiary hearing, however, is self-evident in light of the increasing complexity of the majority of workers' compensation cases which are brought at the trial level. R.C. 4123.519[F] provides that an award of attorney fees is to be based upon the "time and effort expended" by a claimant's counsel. The calculation of such an award should not merely involve multiplication of hours expended by counsel times a base rate. To the contrary, the trial court should consider additional factors such as the complexity of the issues involved; the skill required; the attorney's experience, ability and reputation; the amount involved and benefit resulting to the client from services; and the customary fee charged by other members of the bar.**

84 Ohio App.3d at 680.  The need for evidentiary hearings on attorney's fees and costs is even greater in light of our decision in this case.

{¶80} Upon remand, the trial court must hold an evidentiary hearing to determine a reasonable amount of attorney's fees to tax Crawford Machine based upon the "effort expended" by Holmes' trial counsel as required under R.C.

-41-

4123.512(F). The trial court should not tax Crawford Machine with any attorney's fees that are *strictly related* to Holmes' unsuccessful claims/conditions, however, as that would be unreasonable in this case.

{¶81} Crawford Machine's assignment of error is, therefore, sustained.

{¶82} As a final matter, we recognize that our holding in this case conflicts with the Tenth District's holding in *Hollar v. Pleasant Twp.*, 10th Dist. No. 03AP-250, 2003-Ohio-6827. Pursuant to Section 3(B)(4), Article IV, of the Ohio Constitution, we certify a conflict between our holding here and the Tenth District's holding in *Hollar v. Pleasant Twp.* We certify the following question to the Supreme Court of Ohio:

> **When a claimant/employee petitions the common pleas court to participate in the workers' compensation fund for multiple claims/conditions and the trier of fact finds that the claimant/employee is entitled to participate in the fund for at least one of those claims/conditions but not all of the claims/conditions, does the trial court abuse its discretion under R.C. 4123.512(F) by taxing an opposing party attorney's fees and costs that are strictly related to the claims/conditions for which the trier of fact determined that the claimant/employee was *in*eligible to participate in the fund?**

{¶83} Having found error prejudicial to Crawford Machine in the particulars assigned and argued herein, we reverse the judgment of the trial court in appellate case no. 3-11-12 (trial court case no. 10 CV 0221) and remand for

further proceedings consistent with this opinion.

***Judgment Affirmed in Case No. 3-11-09***

***Judgment Reversed and Cause Remanded***
***in Appellate Case No. 3-11-10***

***Judgment Reversed and Cause Remanded***
***in Appellate Case No. 3-11-12***

**SHAW and WILLAMOWSKI, J.J., concur.**

**/jlr**