RMW VENTURES, L.L.C., Appellant,

v.

STOVER FAMILY INVESTMENTS, L.L.C., et al., Appellees.

[Cite as *RMW Ventures, L.L.C. v. Stover Family Invest.,
L.L.C.*, 161 Ohio App.3d 819, 2005-Ohio-3226.]

Court of Appeals of Ohio,
Third District, Defiance County.

Nos. 4–04–20, 4–04–21, 4–04–22 and 4–04–23.

Decided June 27, 2005.

---

820

Stuart A. Strasfeld and John N. Zomoida Jr., for appellant.

Mark F. Warncke, for appellee R & L Enterprises.

David H. Williams, Defiance Law Director, for appellee city of Defiance.

ROGERS, Judge.

{¶ 1} Petitioner-appellant, RMW Ventures ("RMW"), appeals a judgment of the Defiance County Court of Common Pleas dismissing RMW's petitions for appropriation against respondents-appellees, Stover Family Investments ("Stover"), R & L Enterprises ("R & L"), Volk Properties ("Volk"), and Lankenau Properties ("Lankenau"). On appeal, RMW asserts that the trial court erred in granting a motion to dismiss. Finding that the trial court proceeded under the wrong Revised Code section and that it failed to make a required finding of necessity, we reverse the judgment of the trial court and remand for proceedings consistent with this opinion. Additionally, we find that the trial court failed to separately determine RMW's rights as to each property.

{¶ 2} Enterprise Industrial Park is located in the city of Defiance ("City"). The industrial park consists of seven lots. Lots 1 through 5 of the park include a 433.307–acre parcel of land known as Zeller's First Addition. On July 1, 2004, Lot 1 was owned by the City, Lot 2 was owned by Volk, Lot 3 was owned by R & L, Lot 4 was owned by Stover, and Lot 5 was owned by Lankenau.

{¶ 3} On July 1, 2004, after failing to negotiate a deal with each of the above-named appellees, RMW filed petitions to appropriate Lots 2 through 5, pursuant to R.C. 4961.13, against Volk, R & L, Stover, and Lankenau. RMW's petitions were filed so that it could begin construction on a railroad spur, which would be located to the west of Lots 5 through 2.[1]

{¶ 4} On July 22, 2004, the City obtained a general warranty deed from Volk for Lot 2. As a result of acquiring Lot 2, on August 3, 2004, the City filed a motion to intervene, pursuant to Civ.R. 24; an answer on behalf of Volk; a motion to consolidate, pursuant to Civ.R. 42; and, finally, a motion to dismiss, pursuant to Civ.R. 12(B)(1) and 12(B)(6).

{¶ 5} On August 6, 2004, a hearing was held to determine the issues of the City's motions to intervene and consolidate. At the hearing, counsel for RMW, the City, R & L, and the Defiance County Board of Commissioners were present.[2] Finding that the City was the legal owner of Lot 2, the court granted

---

1. While RMW's petitions for appropriation as well as the included maps show that RMW's plan was to extend the railroad spur onto Lot 1, we have nothing in the record before us showing that a petition for appropriation was filed for Lot 1.

2. Defiance County Board of Commissioners ("County") filed a motion for intervention on behalf of defendant R & L, claiming ownership in Lot 3. However, based on the record before this court, it appears that the trial court never ruled on the County's motion for intervention. Furthermore, the County is not a party in the present matter on appeal.

its motion for intervention. Additionally, the trial court granted the City's motion to consolidate the four respondents' cases.

{¶ 6} Finally, finding that the City's ownership of Lot 2 was determinative of the entire RMW project, the trial court granted the City's motion to dismiss as to all respondents. It is from this judgment that RMW appeals, presenting the following assignment of error for our review:

The trial court erred in granting the City's Motion to Dismiss.

{¶ 7} In the sole assignment of error, RMW contends that the trial court erred in granting the City's motion to dismiss. Specifically, RMW contends that the trial court was prohibited from relying on facts not included in RMW's petition for appropriation when ruling on the City's Civ.R. 12(B)(6) motion, that the trial court was required to provide RMW with at least seven days to respond to the City's motion to dismiss before ruling on such motion, that R.C. 4961.16 and 4961.17 are inapplicable because RMW did not intend to use or occupy Lot 2 for an elevated track and, finally, that, pursuant to R.C. 4961.13, RMW is authorized to appropriate all of the lots. Additionally, RMW filed a supplemental brief, arguing that under the doctrine of lis pendens, the City was bound by the results of RMW's appropriation action against Volk because it had acquired ownership of Lot 2 while the action was pending.

{¶ 8} We review de novo a trial court's disposition of a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *Hunt v. Marksman Prod.* (1995), 101 Ohio App.3d 760, 762, 656 N.E.2d 726. Dismissal is appropriately granted if all the factual allegations of the complaint are presumed true, all reasonable inferences are made in favor of the nonmoving party, and it appears beyond doubt that the nonmoving party cannot prove any set of facts entitling him to the requested relief. *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.* (1992), 65 Ohio St.3d 545, 548, 605 N.E.2d 378.

{¶ 9} We begin our discussion with the issue of lis pendens. Ohio's lis pendens statute, R.C. 2703.26, clearly states: ·

When summons has been *served* or publication made, the action is pending so as to charge third persons with notice of pendency. While pending, no interest can be acquired by third persons in the subject of the action, as against the plaintiff's title.

(Emphasis added.)

{¶ 10} RMW filed its petition for appropriation against Volk on July 1, 2004. However, Volk was not served until July 29, 2004, when the summons was reissued to Volk by ordinary mail, following the summon's being returned initially

as unclaimed. Volk transferred the property to the City by warranty deed on July 22, 2004.

{¶ 11} Accordingly, pursuant to R.C. 2703.26 and Civ.R. 4.1(A), because Volk was not served until after the transfer of warranty deed to the City, the doctrine of lis pendens does not apply to the case at bar. See, also, *Pease Co. v. Huntington Natl. Bank* (1985), 24 Ohio App.3d 227, 230, 24 OBR 437, 495 N.E.2d 45.

{¶ 12} Finding that the doctrine of lis pendens does not apply, we will now address RMW's remaining issues. On appeal, RMW asserts that R.C. 4961.13 authorizes it to appropriate Lot 2 even if Lot 2 is owned by the City.

{¶ 13} R.C. 4961.13 provides:

A railroad company, domestic or foreign, or municipal corporation which owns or operates a railroad may enter upon *any land* for the purpose of examining and surveying its railroad line, and may appropriate so much of such land as is necessary for its railroad including necessary sidetracks, depots, workshops, roundhouses, and water-stations, material for construction, except timber, a right of way over adjacent lands sufficient to enable it to construct and repair its road, and the right to conduct water by aqueducts and to make proper drains.

(Emphasis added.)

{¶ 14} Generally, the power to appropriate property for public use is encompassed under the law of eminent domain, and the power is inherent in the state. *Louisville & Nashville Ry. v. Cincinnati* (1911), 12 Ohio N.P. 65, 1911 WL 856. While the general power of eminent domain is vested with the state, the state may delegate its power to municipalities, corporations, public or private, and in some instances, private citizens. Id. at *2. "Such municipalities, corporations, and citizens have only such power to appropriate property under the law of eminent domain as is delegated to them by the state. The delegation of power must be either in express terms or by necessary implication." Id.

{¶ 15} Based upon specific sections of the Ohio Revised Code as well as their precursors, the legislature has delegated to railroad companies the power to appropriate property. See R.C. 4955.01 and 4955.02; 4961.10; 4961.13; 4961.15 through 4961.17; R.S. 3283 (Gen.Code 8763–8763); R.S. 3283a (Gen.Code 8767–8769). Specifically, railroad companies have been given the power to appropriate private property as well as public property, which falls within specific classes defined under the Revised Code. Id.; *Louisville,* supra.

{¶ 16} Starting with R.C. 4961.13, railroad companies have been given a broad power to appropriate land, based upon the inclusion of the "any land" language. While R.C. 4961.13 appears to have given railroad companies broad power to

appropriate land, such power is not without limits. As noted above, the power of railroad companies is specifically delegated to them by the legislature, as no such power exists outside those specific powers delegated by the legislature. Accordingly, to determine the limits of a railroad company's power to appropriate land, the other sections of the Revised Code dealing with a railroad company's ability to appropriate land must also be considered.

{¶ 17} In addition to R.C. 4961.13, the Revised Code also includes the following sections dealing with a railroad company's ability to appropriate land.

{¶ 18} R.C. 4955.01 provides:

If, in the location of any part of a railroad owned or operated by a domestic or foreign corporation, it is necessary to occupy with a surface or elevated track, with the necessary supports for it, any public road, street, alley, way, or ground of any kind, or part thereof, the municipal corporation or other corporation, or the public officers or authorities owning or having charge of such public road, street, alley, way, or ground, and the company may agree upon the manner and conditions upon which it can be used or occupied. In the event of the occupancy of such ground with an elevated track, the agreement shall specify the number, character, and location of all supports for the track, any part of which will be upon such public ground, and the vertical and longitudinal clearances between such supports.

{¶ 19} R.C. 4955.02 provides:

If the parties are unable to agree as provided in section 4955.01 of the Revised Code, and it is necessary in the judgment of the board of directors of the railroad company, to use or occupy such road, street, alley, way, or ground, or a part thereof, for surface tracks or for crossing with an elevated structure when no piers, supports, or obstructions are to be placed in such road, street, alley, way, or ground, the company may appropriate so much of it as is necessary for the purposes of its railroad in the manner and upon the terms provided for in sections 163.01 to 163.22, inclusive, of the Revised Code.

{¶ 20} R.C. 4961.16 provides:

If, in the judgment of the board of directors of any domestic or foreign corporation owning or operating a railroad wholly or partly within this state, it is necessary to use and occupy for an elevated track any portion of any public ground lying within the limits of a municipal corporation and dedicated to the public for use as a public ground, common, landing, or wharf, or for any other public purpose, except all streets, avenues, alleys, or public roads, such company may appropriate an easement over so much of such ground as is necessary for such purpose, including the right to maintain the necessary piers and supports for the elevated track. Such appropriation shall be limited to

such an easement as is necessary for the construction, maintenance, and uses of such elevated track, in accordance with the plan provided for in section 4961.17 of the Revised Code. Proceedings for appropriation shall be conducted in the manner and upon the terms provided for in sections 163.01 to 163.22, inclusive, of the Revised Code.

{¶ 21} When reading the broad power granted in R.C. 4961.13 in pari materia with these other sections of the Revised Code, it becomes apparent, as noted above, that the legislature has created two separate powers of eminent domain. Again, R.C. 4961.13 authorizes the railroad companies to appropriate "any land." However, R.C. 4955.01, 4955.02, and 4961.16 specifically refer to railroad companies' authority to appropriate "any public ground lying within the limits of a municipal corporation," and "any public, road, street, alley, way, or ground of any kind." Therefore, when read together, it becomes clear that the broad power granted to railroad companies under R.C. 4961.13 deals solely with private property. See *State ex. rel. Atty. Gen. v. Cincinnati Cent. R. Co.* (1881), 37 Ohio St. 157 (the precursor to R.C. 4961.13 applied only to the appropriation of private property). Thus, the powers granted in R.C. 4955.01, 4955.02, and 4961.16, which are much more limited in scope, restrict the authority of railroad companies to appropriate public property.

{¶ 22} Accordingly, we are unpersuaded by RMW's argument that R.C. 4961.13 authorizes it to appropriate Lot 2, which was owned by the City, in the same manner in which it would go about appropriating land owned by a private corporation, such as Volk. Accordingly, we find RMW's argument that R.C. 4961.13 is controlling to be without merit.

{¶ 23} While RMW is not authorized to appropriate Lot 2 pursuant to R.C. 4961.13, we must determine whether it is nevertheless authorized to appropriate that lot under one of the other sections of the Revised Code. At the August 6, 2004 hearing, the trial court stated in general terms that RMW did not have the power to appropriate municipal property. Additionally, in its judgment entry, the trial court found that pursuant to R.C. 4961.17, RMW failed to state a claim on which relief could be granted. Specifically, the trial court stated, "The Complaints do not allege the general plans of the purposed structure, a part of which is to be located on public ground, have been approved by Ordinance of the municipal legislative authority."

{¶ 24} We first note that the trial court failed to recognize that at the time the complaint was filed, the City did not own Lot 2. Accordingly, RMW had no reason to include a general plan of the purposed structure that was to be located on public ground. Additionally, the trial court's reliance upon R.C. 4961.17 was error.

{¶ 25} R.C. 4961.17 applies only to an appropriation under section 4961.16. R.C. 4961.16 deals only with appropriations of easements for elevated tracks. Accordingly, because RMW was not seeking to build an elevated track, neither R.C. 4961.16 nor 4961.17 is applicable to this case.

{¶ 26} While R.C. 4961.16 and 4961.17 apply only to elevated tracks, R.C. 4955.01 applies to surface tracks as well as elevated tracks. As noted above, under R.C. 4955.01, railroad companies are authorized, where it is necessary, to appropriate property for surface tracks as well as necessary supports for such tracks on any public roads, streets, alley, way or ground of any kind, so long as the railroad company and the municipal corporation or public officer in charge of such property are able to agree. R.C. 4955.02 additionally states that where a railroad company and a municipal corporation or public officer are unable to agree, then the railroad company may appropriate only "so much of it as is necessary for the purposes of its railroad in the manner and upon the terms provided for in sections 163.01 to 163.22," which deal with the appropriation of land.

{¶ 27} In *Rockport v. Cleveland, Cincinnati, Chicago & St. Louis Ry. Co.* (1911), 85 Ohio St. 73, 97 N.E. 133, the Supreme Court of Ohio acknowledged that railroad companies are not given unlimited authority to appropriate public property.[3] Specifically, the court noted that the statute allowing for the appropriation of public property specifically referred only to surface and elevated tracks, while the general appropriation statute specifically referred to sidetracks, "depots, workshops, roundhouses, and water[-]stations." Id. at 85, 97 N.E. 133. Accordingly, strictly construing the railroad company's power of eminent domain, the court held that the burden was upon the railroad company to prove that the tracks were necessary for operation. Id. at 87, 97 N.E. 133.

{¶ 28} The City argues that *Rockport* stands for the proposition that only main-line railroad tracks are necessary under the discussed statutes. Thus, according to the City, RMW's claim must be denied as a matter of law because its plans to appropriate Lot 2 are only for a sidetrack or spur as opposed to a main line.

{¶ 29} Upon review of the *Rockport* case, we cannot find that the Supreme Court held that only main tracks can be deemed necessary under the applicable sections. First, the *Rockport* case dealt specifically with a railroad company's appropriation petition that was attempting to cross a public street so that the company was able to access its train yards. Id. In *Rockport*, the court agreed with the trial court's finding that in that case, a sidetrack crossing a street to get

---

3. *Rockport* did not deal with R.C. 4955.01 and 4955.02; however, it dealt with the precursors of those sections.

to a yard was not a necessity under the terms of the statute. Id. However, the court did not rest its determination on the fact that the track was not a main line. Id.

{¶ 30} Secondly, R.C. 4955.01 specifically states that a railroad company may appropriate public land if it is necessary for a railroad company to "occupy with a surface or elevated track, *with the necessary supports for it.*" (Emphasis added.) The wording of R.C. 4955.01 specifically mentions surface or elevated tracks, as well as any necessary support for such tracks. Accordingly, based upon the statutory language, we will not read into the above statute the restriction argued by the City.

{¶ 31} Thus, based upon the foregoing discussion, we find that RMW has the authority to appropriate public property, Lot 2, so long as that appropriation is necessary for the purposes of the railroad company. Furthermore, we find that based upon the opposition by the City to this action, it is clear that the City is not in agreement with RMW's plan. Accordingly, any right RMW may have to appropriate Lot 2 comes under R.C. 4955.02. Because the trial court proceeded under R.C. 4961.17, which did not require a finding of necessity, there has been no such finding as to that issue. Accordingly, this cause must be remanded to the trial court so that the trial court can determine whether such appropriation is necessary.

{¶ 32} Furthermore, we note that prior to the trial court's ruling on these issues, the trial court should give RMW leave to amend its complaint so that it is in conformity with the proper Revised Code sections and that all parties should be given the appropriate time to respond in accordance with the Civil Rules of Procedure as well as the trial court's own local rules.

{¶ 33} Thus, having found that RMW may in fact be entitled to relief under R.C. 4955.02, we sustain the assignment of error and remand for further finding on the issue of necessity.

{¶ 34} Finally, we note that upon review of the record before us, the trial court's blanket dismissal of all RMW's petitions was inappropriate as well. The City's ownership of Lot 2 has no bearing as to RMW's claims against Lot 3, Lot 4, and Lot 5. Accordingly, the trial court's judgment as to the other Lots is reversed and remanded for further separate determination by the trial court.

{¶ 35} Having found error prejudicial to the appellant herein in the particulars assigned and argued, we reverse the judgments of the trial court and remand the matter for further proceedings consistent with this opinion.

Judgments reversed
and cause remanded.

CUPP, P.J., and BRYANT, J., concur.