[Cite as *ISHA, Inc. v. Risser*, 2013-Ohio-2149.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

ISHA, INC.
DBA QUIZNOS SUB,

      PLAINTIFF-APPELLANT,                  CASE NO. 1-12-47

      v.

CONSTANCE J. RISSER,               O P I N I O N
TRUSTEE, ET AL.,

      DEFENDANTS-APPELLEES.

**Appeal from Allen County Common Pleas Court**
**Trial Court No. CV 2011 0689**

**Judgment Affirmed**

**Date of Decision: May 28, 2013**

APPEARANCES:

    *Harold Pollock and Kevin J. Stotts* **for Appellant**

    *Michael A. Rumer and Zachary D. Maisch* **for Appellees**

**PRESTON, P.J.**

{¶1} Plaintiff-appellant, ISHA, Inc. d.b.a. Quizno's Classic Subs (hereinafter "ISHA"), appeals the Allen County Court of Common Pleas' grant of partial summary judgment in favor of defendants-appellees, Constance J. Risser, Trustee of the Donna F. Baber Trust, Constance J. Risser, and Joseph H. Baber, stemming from ISHA's attempt to exercise an option to purchase in a commercial lease agreement after The Ohio Department of Transportation ("ODOT") appropriated the property subject to the lease for highway improvements. For the reasons that follow, we affirm.

{¶2} Donna F. Baber ("Donna") owned commercial property located at 2445 Elida Road in Lima, Ohio ("the property"). On July 24, 1997, she created an inter vivos trust called "The Donna F. Baber Trust," naming her daughter, Constance J. Risser ("Risser"), as a successor trustee. (Ayda Aff., Doc. No. 46, attached); (Answer, Doc. No. 20).

{¶3} On November 26, 1997, Donna appointed her husband, Joseph H. Baber ("Joseph"), as her power of attorney. (P's Motion for Partial Summary Judgment, Doc. No. 46, Ex. A); (Joseph Depo. at 19-20, 46-47, 106).

{¶4} Sometime near the end of 2001 to the beginning of 2002, Ashwani Ayda (hereinafter "Ayda"), the president of ISHA, decided to open a Quizno's on the property. (Ayda Aff., Doc. No. 46, attached). To that end, Ayda began

negotiating a commercial lease agreement with Joseph, Donna's attorney in fact. (*Id.*).

{¶5} On June 4, 2002, Ayda and Joseph executed a hand-written memorandum memorializing certain terms of the lease agreement, including, in relevant part, that Ayda would have the option to purchase the property anytime during the first two years of the lease for $175,000.00; if Ayda purchased the property after that time, the purchase price increased ten percent every two years. (*Id.*); (Doc. No. 46, Ex. B); (Joseph Depo. at 35-36); (Ayda Aff., Doc. No. 46, attached). On or about June 5, 2002, the parties executed a letter of intent to lease the premises. (Doc. No. 46, Ex. C).[1]

{¶6} On July 18, 2002, ISHA entered into a commercial lease agreement with Donna in order to operate a Quizno's at the property. (Complaint, Doc. No. 1, Ex. B); (Joseph Depo. at 12). Joseph signed the lease agreement on Donna's behalf as her attorney in fact. (Complaint, Doc. No. 1, Ex. B). Ayda, a.k.a. "Eddy," signed on behalf of ISHA as its president. (*Id.*); (Joseph Depo. at 49). That same month, ISHA entered the property and expended approximately

---

[1] The contents of the letter of intent are in dispute. During his deposition, Joseph testified that he did not recognize the last two pages of the purported letter of intent and insisted that they had been added to the original document. (Joseph Depo. at 35).

$300,000.00 to renovate the property for the operation of a restaurant. (Ayda Aff., Doc. No. 46, attached).[2]

{¶7} On or about September 20, 2006, Donna passed away due to complications arising from multiple sclerosis. (*See id.*); (Answer, Doc. No. 20); (Joseph Depo. at 14, 44). Thereafter, title to the property and rights under the lease agreement transferred to the Donna F. Baber Trust with Risser as Trustee. (Ayda Aff., Doc. No. 46, attached); (*see* Risser Depo. at 9-10).

{¶8} On May 28, 2008, ODOT provided Trustee Risser with notice of its intent to acquire the property for a highway project and a good faith offer of $277,607.00. (D's Cross-motion for Summary Judgment, Doc. No. 52, attached). That same day, ODOT also provided notice to ISHA of the same and a good faith offer of $65,793.00 for tenant-owned improvements on the property. (*Id.*).

{¶9} Due to ODOT's pending appropriation of the property, on August 9, 2009, ISHA closed the business, and in September 2009 ISHA vacated the premises and ceased making rental payments under the lease agreement. (Adya Aff., Doc. No. 46, attached); (Risser Aff., Doc. No. 52, attached).

{¶10} On August 24, 2009, ODOT filed a petition to appropriate and fix compensation for the property in the Allen County Court of Common Pleas, which

---

[2] Prior to Ayda executing the lease agreement , the commercial building on the property was used as a retail store and not equipped as a restaurant. (Joseph Depo. at 34).

was assigned trial court case no. CV 2009 0868. (Doc. No. 52, attached).[3]  Both Trustee Risser and ISHA were named defendants in the petition. (*Id*.).

**{¶11}** On September 15, 2009, Trustee Risser filed an answer and cross-claim in the appropriations case. (*Id*.).  In Count One of her cross claim, Trustee Risser alleged that, beginning in 2004, ISHA failed to pay the entire rent under the lease agreement and owed $21,525.00 in back rent. (*Id*.).  In Count Two, Trustee Risser claimed that, under paragraph nine of the lease agreement, the trust was entitled to any appropriation proceeds related to ISHA's improvements to the property. (*Id*.).  In Count Three, Trustee Risser asserted that the trust was, alternatively, entitled to any and all appropriation proceeds under paragraph twenty-five of the lease agreement, which provided that the landlord's appropriation award would not be reduced by the lessee's appropriation award. (*Id*.).

**{¶12}** On January 22, 2010, during a conference with ISHA's attorney, Ayda recalled negotiating an option to purchase in the lease agreement. (Doc. No. 46, Ex. F).  ISHA's counsel reviewed the copy of the lease agreement Joseph provided and discovered it did not have an option. (*Id*.).  Thereafter, Ayda obtained a copy of the lease agreement that was in his possession, which contained

---

[3] Defendants attached several exemplified documents from the prior appropriations case, CV 2009 0868, to their cross-motion for summary judgment in this case, trial court no. CV 2011 0689.  While these exemplified documents have their own docket numbers associated with the prior case, we will cite to them as attachments to defendants' cross-motion for summary judgment in this case, CV 2011 0689, which is docket number 52.

the option as paragraph 35 of the lease agreement, just above the signatures, as well as other attachments which referenced the option. (*Id.*); (Doc. No. 46, Ex. D). On January 27, 2010, ISHA's attorney sent a letter to Trustee Risser's attorney expressing ISHA's desire to exercise the option. (Doc. No. 46, Ex. F).

{¶13} On February 18, 2010, ISHA filed its reply to Trustee Risser's cross-claim, denying that it owed back rent due to an alleged agreement in October 2004 between the parties to reduce rent based on the restaurant's lower-than-expected sales numbers and an oral agreement to allow Joseph and his family to eat at Quizno's free of charge. (Doc. No. 52, attached); (Ayda Aff., Doc. No. 52, attached). ISHA admitted making improvements to the property but alleged that the parties had a verbal understanding that ISHA would be compensated for any improvements it made in the event of an appropriations action. (Doc. No. 52, attached).

{¶14} On March 11, 2010, Trustee Risser moved for summary judgment on her cross-claim. (*Id.*). On March 26, 2010, ISHA filed a response arguing that it was entitled to an appropriation award for any trade fixtures it had installed in the restaurant pursuant to paragraph nine of the lease; that the lease was still valid since neither party gave notice of any default and an opportunity to cure; and, that whether the lease agreement contained an option is a question of fact precluding summary judgment. (*Id.*). On this same day, ISHA also filed a motion for leave

to file a cross-claim against Trustee Risser "to establish its rights pursuant to [an alleged] lease agreement," as it related to the option. (Nov. 23, 2010 JE, Doc. No. 52, attached).

{¶15} On April 7, 2010, Trustee Risser filed a reply to ISHA's response to the motion for summary judgment, arguing that ISHA's abandonment of the property coupled with their failure to pay rent terminated the lease agreement; and, that the purported option to purchase is immaterial since the alleged option was not exercised prior to the termination of the lease agreement. (Doc. No. 52, attached).

{¶16} On May 17, 2010, the trial court granted Trustee Risser summary judgment on the cross-claim finding that ISHA was not entitled to any of the appropriation award since it had negotiated away that right in paragraphs nine and twenty-five of the lease agreement. (*Id.*). The trial court certified its judgment as a final, appealable order under Civ.R. 54(B), but ISHA failed to appeal that judgment. (*Id.*); (ISHA's Answer to Interrogatories, Doc. No. 9).

{¶17} On July 20, 2010, a settlement entry signed by ISHA's attorney was filed awarding Trustee Risser $358,400.00 for the property. (Doc. No. 52, attached). On September 3, 2010, a settlement entry signed by ISHA's attorney was filed awarding ISHA $1,000.00, which indicated that "the Defendants have settled all pending cross-claims and agree upon the final distribution * * *." (*Id.*).

{¶18} Thereafter, on November 23, 2010, the trial court apparently realized that it had never ruled on ISHA's motion for leave to file its cross-claim against Trustee Risser concerning ISHA's right to purchase the property. (Nov. 23, 2010 JE, Doc. No. 52, attached). The trial court denied the motion for leave concluding that its May 17, 2010 judgment entry determined that ISHA had negotiated away its right to any appropriations award, and, regardless, the parties had subsequently filed settlement entries wherein ISHA represented that all pending cross-claims had been resolved. (*Id.*).

{¶19} On September 11, 2011, after the trial court denied leave for ISHA to file the cross-claim in the appropriations case, trial court no. CV 2009 0868, ISHA filed a complaint against Constance J. Risser, Trustee of the Donna F. Baber Trust, Constance J. Risser, and Joseph H. Baber for specific performance, declaratory relief, and money damages based upon the option to purchase. (Doc. No. 1). This case, which is the subject of the present appeal, was assigned trial court case no. 2011 CV 0689. (*Id.*).

{¶20} On December 2, 2011, ISHA filed an amended complaint against the same defendants. (Doc. No. 17). On December 9, 2011, Joseph filed an answer and counterclaim alleging that ISHA's case was frivolous under R.C. 2323.51. (Doc. No. 18). On that same day, Risser filed a Civ.R. 12(B)(6) motion to dismiss

her from the case in her individual capacity, which the trial court granted on December 23, 2011. (Doc. Nos. 19, 24).

{¶21} On September 4, 2012, ISHA filed a motion for partial summary judgment. (Doc. No. 46). On September 13, 2012, Trustee Risser and Joseph H. Baber filed a memorandum in opposition and a cross-motion for partial summary judgment. (Doc. Nos. 51-52). On September 25, 2012, ISHA filed a memorandum in opposition. (Doc. No. 53).

{¶22} On September 26, 2012, the trial court granted Trustee Risser and Joseph H. Baber partial summary judgment, concluding that ISHA had negotiated away its right to any appropriation award in paragraphs nine and twenty-five of the lease; and, even assuming the option was part of the lease agreement, ISHA's attempt to exercise the option was ineffective since the taking had already occurred. (JE, Doc. No. 54). Since the trial court did not rule on defendants' counterclaim, the trial court certified the judgment as a final, appealable order under Civ.R. 54(B). (*Id.*).

{¶23} On October 25, 2012, ISHA filed a notice of appeal. (Doc. No. 56). ISHA raises three assignments of error for our review.

**Assignment of Error No. I**

**The trial court erred in denying the appellant's motion for partial summary judgment where reasonable minds could only conclude that Risser breached the lease by refusing to allow**

**ISHA to exercise its option and take Risser's position in the appropriation case.**

**{¶24}** In its first assignment of error, ISHA argues that the trial court erred in denying its motion for partial summary judgment since it could exercise the option after the appropriation had occurred as the equitable owner of the fee interest. ISHA also argues that Trustee Risser never properly terminated the lease.

**{¶25}** We review a decision to grant summary judgment de novo. *Doe v. Shaffer*, 90 Ohio St.3d 388, 390 (2000). De novo review is independent and without deference to the trial court's determination. *Costner Consulting Co. v. U.S. Bancorp*, 195 Ohio App.3d 477, 2011-Ohio-3822, ¶ 10 (10th Dist.).

**{¶26}** Summary judgment is proper where there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, reasonable minds can reach but one conclusion when viewing the evidence in favor of the non-moving party, and the conclusion is adverse to the non-moving party. Civ.R. 56(C); *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 219 (1994).

**{¶27}** Material facts are those facts "that might affect the outcome of the suit under the governing law." *Turner v. Turner*, 67 Ohio St.3d 337, 340 (1993), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986). "Whether a genuine issue exists is answered by the following inquiry: [d]oes the evidence present 'a sufficient disagreement to require submission to a jury' or is it

'so one-sided that one party must prevail as a matter of law [?]'" *Turner* at 340, citing *Liberty Lobby, Inc.* at 251-252.

{¶28} Summary judgment should be granted with caution, resolving all doubts in favor of the nonmoving party. *Osborne v. Lyles*, 63 Ohio St.3d 326, 333 (1992). "The purpose of summary judgment is not to try issues of fact, but is rather to determine whether triable issues of fact exist." *Lakota Loc. Schools Dist. Bd. of Edn. v. Brickner*, 108 Ohio App.3d 637, 643 (6th Dist.1996).

{¶29} ISHA argues that it could exercise the option to purchase after the appropriation action relying exclusively upon *Cullen & Vaughn Co. v. Bender Co.*, 122 Ohio St. 82 (1930). The facts of that case are the following. Cullen & Vaughn leased property from Bender for a term of 15 years with an option to purchase, which could be exercised any time during the term of the lease for a fixed sum of $110,000.00. *Id*. at 83. The property had water power rights which were specifically mentioned in the lease and were part of the consideration for the lease. *Id*. After Cullen & Vaughn took possession of the land, the water rights were appropriated for the creation of a water conservancy, and Bender was awarded $6,000.00 as a result of the taking. *Id*. at 83-84. Cullen & Vaughn intervened in the appropriation action alleging damages to its leasehold interest but did not recover any award or damages as lessee. *Id*. at 84. Cullen & Vaughn did not appeal the appropriation award. *Id*. at 87.

**{¶30}** Thereafter, Cullen & Vaughn exercised its option and paid $110,000.00 for the property, though it protested that it should have received credit for the $6,000.00 appropriation award Bender received. *Id*. at 84. Nearly four years later, Cullen & Vaughn demanded that Bender refund it the $6,000.00, but Bender refused. Cullen & Vaughn then filed a complaint in the common pleas court for the money. *Id*. at 85. The trial court dismissed the complaint and the appellate court affirmed. *Id*. at 85-86. The Ohio Supreme Court accepted the case. *Id*. at 86.

**{¶31}** As a procedural matter, the Ohio Supreme Court first determined that the appropriations proceeding did not result in an estoppel to prevent Cullen & Vaughn from bringing the subsequent action. *Id*. at 86-87. The Court observed that the parties' claims in the appropriation proceedings were different—Bender's claim concerned damages to the freehold estate, while Cullen & Vaughn's claim concerned damages to the leasehold estate. *Id*. at 86. The Court further observed that the conservancy court lacked general jurisdiction, and therefore, was not empowered to adjudicate the conflicting rights and interests in the property. *Id*. at 87. Furthermore, the Court noted that, even if the conservancy court did have this power, the power was not exercised, and any appeal taken from its proceeding would be limited to the award. *Id*.

**{¶32}** After passing this procedural hurdle, the Court then set forth to answer the following question:

> Where a lease with the privilege of purchase of the fee is executed and delivered, and before the option to purchase is exercised a portion of the property is taken in appropriation proceedings and all the condemnation money paid to the lessor, and the lessee thereafter exercises such option and pays the consideration agreed upon for the fee, is the lessee entitled to the amount of condemnation money received by the lessor? *Id*. at 89.

The Court ultimately answered this question in the affirmative. In doing so, the Court examined three competing rules of law, the nature of the option, and the nature of the conveyance.

**{¶33}** The Court first observed that there were three alternative rules of law concerning the interest created by an option. *Id*. at 89. The first rule is that an option to purchase in a lease agreement creates only a personal contract right, not an interest or estate in land. *Id*. The second rule is that an option to purchase unaccompanied by a lease or other right is an interest in land. *Id*. The third rule is that a lessee in possession under a lease containing an option to purchase has an interest in land. *Id*.

**{¶34}** Thereafter, the Court observed that the option, by its nature, is an incomplete contract that does not become a binding obligation creating an interest in land until exercised by the optionee. *Id*. at 92. Therefore, the Court concluded that the optionor is only bound to convey the property in its present condition, whether damaged or destroyed, and the optionee assumes this risk of casualty. *Id*. However, if the optionor conveys part of the property to a third party, in violation of the lease agreement, and makes it impossible to convey that part of the property to the optionee, the optionor is liable in damages for the value of the property wrongfully conveyed to the third party. *Id*. Applying these general rules in the context of a lease for a term of years containing an option to purchase for a fixed sum where the lessee enters possession, the Court concluded that the option is an essential term of the lease, without which the lease would not have been executed; and therefore, the option becomes an interest in the land as much as any other covenant in the lease. *Id*. at 92-93.

**{¶35}** The Court then noted that, while the rule holding the lessor liable in the event he conveys part of the property is clear, the liability of the lessor in the case of an appropriation is less clear since the lessor had no choice but convey the property. *Id*. at 93. From the lessee's perspective, though, the value of the fee estate for which he negotiated an option to purchase for a fixed sum ($110,000.00) was, nevertheless, reduced just the same as it would have been reduced by the

lessor's voluntary conveyance of part of the fee estate. *Id*. at 93-94. During the appropriation proceeding, it was determined that the taken property was worth $6,000.00; thereby reducing the value of the remaining fee estate by that same amount. *Id*. at 93.

**{¶36}** The Court concluded that it was not necessary to determine whether an option, *not* coupled with a lease, conveys an interest in land prior to its exercise. *Id*. at 94. The Court adopted the third rule of law and concluded that:

> In this case a lease was executed, and one of its conditions was that the lessee might purchase the property for a fixed sum at any time during the term of the lease. The lessee was in possession. By virtue of the stipulation, he was entitled to the whole of the property by paying the sum stated. Before the exercise of the option, a part of the property was taken for public use, for which compensation was paid. Under such circumstances the option of purchase must be presumed to have been one of the controlling factors, on the part of the lessee, in determining to execute the lease. The doctrine of equitable conversion applies, [i]t no longer being possible to convey the entire property, the fund which represent[s] the part conveyed belongs to the lessee, as purchaser. *Id*. at 94-95.

{¶37} The facts of this case are significantly different than those in *Cullen & Vaughn, Co.*, supra. To begin with, this case does not involve a partial taking while the lessee continued to remain in possession of the subject property. Here, ODOT appropriated the entire property. Furthermore, Cullen & Vaughn was in possession of the property at the time it exercised the option to purchase. ISHA, on the other hand, vacated the premises and discontinued rental payments. ISHA attempted to exercise the option in January 27, 2010, more than five months after ODOT filed the appropriation petition and after ISHA had vacated the property.

{¶38} It also does not appear that the lease agreement in *Cullen & Vaughn, Co.* contained a provision specifying the parties' respective rights in the event of an appropriations action. This is significant because the default rule provides that a lessee has a property right in the leasehold estate for which he is entitled compensation if the property is appropriated through eminent domain. *Weir Funeral Home, Inc. v. Miller*, 2 Ohio St.2d 189, 191 (1965). However, the parties are free to change the default rule by contract to allow the lessor to terminate the lease cutting off the lessee's right to compensation. *Id.* In this case, the lease specifically provided that:

> If more than twenty-five percent (25%) of the Premises shall be
> taken or appropriated by any public or quasi-public authority under
> the power of eminent domain, either party hereto shall have the right

at its option, within sixty (60) days after said taking, to terminate this Lease upon thirty (30) days written notice. * * * In the event of any taking or appropriation whatsoever, Landlord shall be entitled to any and all awards and/or settlements which may be given on account of the taking of the fee, Tenant shall be entitled to any and all awards and/or settlements which may be given on account of the value of the leasehold estate or Tenant's improvements or trade fixtures, so long as Landlord's award is not reduced thereby. (Complaint, Doc. No. 1, Ex. B, ¶ 25).

Additionally, paragraph nine of the lease provided, in relevant part, that:

Any alterations, additions or improvements to or of said Premises, including but not limited to wall covering, paneling and built-in cabinet work, but excepting movable furniture and trade fixtures, shall at once become a part of the realty and belong to the Landlord and shall be surrendered with the Premises. (*Id*. at ¶ 9).

{¶39} ODOT's good faith estimate for ISHA in the amount of $65,793.00 was for ISHA's improvements to the realty as tenant, including:

Awnings, $2,475; Landscaping, $23; Sign on front of building, $5,670; Patio Concrete, $2,100; sign insert on east side of building, $618; Handicap Parking Sign, $68; Rear Entrance sign, $1,912; Sign

inserts in front of sign, $2,406; Structure improvements, $50,521.

(Doc. No. 52, attached).

These improvements were either part of the realty belonging to the landlord, The Donna F. Baber Trust, per paragraph nine of the lease, or the improvements consisted of trade fixtures,[4] which should have been removed by ISHA prior to the termination of the lease and, if not so removed, became the property of the landlord. *Haflick v. Stober*, 11 Ohio St. 482, 485 (1860); *Logangate Homes, Inc. v. Dollar Sav. and Trust*, 7th Dist. No. 96 CA 250 (June 8, 1999). Consequently, ISHA did not have any right to compensation for these improvements; instead, they either became part of the realty, and consequently, the freehold estate, or became property of the landlord because ISHA failed to remove the trade fixtures prior to the termination of the lease.

{¶40} Furthermore, awarding ISHA for these tenant improvements reduced the value of the landlord's freehold estate, which is contrary to paragraph twenty-five of the lease agreement. ODOT's good faith estimate to Trustee Risser in the amount of $277,607.00 specifically excluded the value of the tenant improvements above. (*Id.*). After the trial court's grant of summary judgment in the appropriations case, however, Trustee Risser was awarded $358,400.00 for the

---

[4] Trade fixtures are "[r]emoveable personal property that a tenant attaches to leased land for business purposes such as a display counter." Black's Law Dictionary 713 (9th Ed.2009).

property, which included the value of the tenant improvements that became part of the realty by virtue of paragraph nine of the lease. (*Id.*).

**{¶41}** ISHA argues that Trustee Risser failed to properly terminate the lease agreement by failing to give notice of the default to The Quizno's Franchise Company ("TQFC") as required under the lease. (Complaint, Doc. No. 1, Ex. B, ¶ 21(e)). While the lease agreement provides for such notice under "Tenant's Default" in paragraph twenty-one, paragraph twenty-two states that:

> "[i]n the event of any such default or breach by Tenant, Landlord may at any time thereafter, in its sole discretion, *with or without notice or demand* and without limiting Landlord in the exercise of a right or remedy which Landlord may have by reason of such default or breach: (a) Terminate Tenant's right to possession of the Premises by any lawful means, in which case this Lease shall terminate and tenant shall immediately surrender possession of the Premises to the Landlord. (*Id*. at ¶ 22).

Vacating the premises and failing to pay rent are grounds for default under the lease agreement. (*Id*. at ¶ 21(a)-(b)). To the extent that these two provisions create an ambiguity with respect to the notice required, we must construe it against ISHA who was the drafter of the lease agreement. *Doe v. Ronan*, 127 Ohio St.3d 188, 2010-Ohio-5072, ¶ 49; (Joseph Depo. at 65-68); (Risser Aff., Doc. No. 52,

attached). Consequently, we cannot conclude that Trustee Risser was required to give TQFC notice of ISHA's breach under the lease agreement. As a practical matter, providing notice to ISHA would have made little sense, anyway, given that its act of vacating and failing to pay rent demonstrated its intent to treat the lease agreement as terminated.

{¶42} Since the parties' negotiated their respective rights in the event of an appropriation actions, the general rules concerning the lessee's right to compensation do not apply herein. *Miller*, 2 Ohio St.2d at 191. Pursuant to the parties lease agreement, the tenant-made improvements were part of the realty belonging to the landlord, and the landlord's compensation for the fee estate was not to be reduced thereby. We are also not persuaded that this case is governed by *Cullen & Vaughn, Co.*, upon which ISHA exclusively relies, for the reasons stated herein. The option in this case was not exercised while the tenant was in possession, like in *Cullen & Vaughn, Co.*; but rather, after ISHA vacated the premises, discontinued rental payments, and ODOT commenced the appropriation action. At that point, the lease agreement terminated along with ISHA's option to purchase. Therefore, the trial court did not err in granting Trustee Risser partial summary judgment or by denying ISHA the same.

{¶43} ISHA's first assignment of error is, therefore, overruled.

**Assignment of Error No. II**

**The trial court erred in granting appellees' motion for summary judgment where the doctrine of *res judicata* did not bar ISHA's claims because the option claim was not and could not have been litigated in *Risser I*.**

{¶44} In its second assignment of error ISHA argues that the trial court erred by granting defendant-appellants' cross-motion for partial summary judgment based, in part, upon the doctrine of res judicata. In particular, ISHA argues that cross-claims are permissive, not mandatory like counterclaims, and that the cross-claim was not actually litigated in the appropriations case (referred to as "*Risser* I" by ISHA) since the trial court denied it leave to file the cross-claim.

{¶45} In its judgment entry, the trial court cited the principle of res judicata as an additional basis for granting Trustee Risser partial summary judgment since ISHA signed settlement entries in *Risser* I. (Sept. 26, 2012 JE, Doc. No. 54). Our conclusion that the trial court did not err in granting Trustee Risser partial summary judgment with respect to ISHA's first assignment of error, however, renders this assignment of error merely academic, and thus, moot. *See Dudek v. United Mine Workers of Am.*, 164 Ohio St. 227, 229 (1955). Therefore, we decline to address it further. App.R. 12(A)(1)(c).

**Assignment of Error No. III**

**The trial court erred in dismissing Risser personally from this action where sufficient grounds existed to retain her as a defendant until discovery had been completed.**

{¶46} In its third assignment of error, ISHA argues that the trial court erred in dismissing Risser, individually, from the case since they alleged that she had been personally involved in the fraudulent act of providing ODOT with an altered version of the parties lease agreement that did not contain the option to purchase.

{¶47} As a preliminary matter, appellees argue that this Court should not address this assignment of error since ISHA failed to attach the trial court's entry dismissing Risser, or otherwise mention the entry, in its notice of appeal as required by App.R. 3(D). We disagree. While App.R. 3(D) requires that the notice of appeal "designate the judgment, order or part thereof apealed [*sic*] from," the trial court's order dismissing Risser was interlocutory and merged into the final judgment entry appealed. Therefore, ISHA was not required to refer to this order in its notice of appeal. *Barrow v. Miner*, 190 Ohio App.3d 305, 2010-Ohio-5022, ¶ 13 (6th Dist.).

{¶48} "A motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint." *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 548 (1992). *See also Davis v. Widman*, 184 Ohio App.3d 705, 2009-Ohio-5430, ¶ 10 (3d Dist.).

To sustain a Civ.R. 12(B)(6) dismissal, "it must appear beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *LeRoy v. Allen, Yurasek, & Merklin*, 114 Ohio St.3d 323, 2007-Ohio-3608, ¶ 14, citing *Doe v. Archdiocese of Cincinnati*, 109 Ohio St.3d 491, 2006-Ohio-2625, ¶ 11. Additionally, the complaint's allegations must be construed as true, and any reasonable inferences must be construed in the nonmoving party's favor. *Id.*, citing *Maitland v. Ford Motor Co.*, 103 Ohio St.3d 463, 2004-Ohio-5717, ¶ 11; *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415, 418 (1995).

{¶49} When reviewing a Civ.R. 12(B)(6) decision, a reviewing court must determine whether the complaint's allegations constitute a statement of a claim under Civ.R. 8(A). *Davis*, 2009-Ohio-5430, at ¶ 11, citing *Keenan v. Adecco Emp. Servs., Inc.*, 3d Dist. No. 1-06-10, 2006-Ohio-3633, ¶ 7. "All that the civil rules require is a short, plain statement of the claim that will give the defendant fair notice of the plaintiff's claim and the grounds upon which it is based." *Patrick v. Wertman*, 113 Ohio App.3d 713, 716 (3d Dist.1996). *See also* Civ.R. 8(A)(1). Indeed, "that each element of [a] cause of action was not set forth in the complaint with crystalline specificity" does not render it fatally defective and subject to dismissal. *Border City S. & L. Assn. v. Moan*, 15 Ohio St.3d 65, 66 (1984). However, "'the complaint must contain either direct allegations on every

material point necessary to sustain a recovery on any legal theory, even though it may not be the theory suggested or intended by the pleader, or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.'" *Fancher v. Fancher*, 8 Ohio App.3d 79, 83 (1st Dist.1982), quoting 5 Wright & Miller, Federal Practice & Procedure: Civil (1969), at 120-123, Section 1216.

{¶50} Fraud claims, on the other hand, are subject to Civ.R. 9(B), which requires that when averments of fraud are made, "the circumstances constituting fraud * * * shall be stated with particularity." *State Sav. Bank v. Gunther*, 127 Ohio App.3d 338, 345 (3d Dist.1998). "The 'circumstances constituting fraud' include the time, place and content of the false representation; the fact represented; the identification of the individual giving the false representation; and the nature of what was obtained or given as a consequence of the fraud." *Id.*, quoting *Aluminum Line Products Co. v. Brad Smith Roofing Co., Inc.*, 109 Ohio App.3d 246, 259 (8th Dist.1996). The particularity requirement provides the defendant notice of the plaintiff's complaints, so that an effective response and defense may be prepared. *Baker v. Conlan*, 66 Ohio App.3d 454, 458 (1st Dist.1990). A failure to plead fraud with particularity results in a defective claim that cannot withstand a Civ.R. 12(B)(6) motion. *Morrow v. Reminger & Reminger Co., L.P.A.*, 183 Ohio App.3d 40, 2009-Ohio-2665, ¶ 20 (10th Dist.).

{¶51} This Court reviews de novo a trial court's decision to grant or deny a Civ.R. 12(B)(6) motion; therefore we may substitute, without deference, our judgment for that of the trial court. *RMW Ventures, L.L.C. v. Stover Family Invest., L.L.C.*, 161 Ohio App.3d 819, 2005-Ohio-3226, ¶ 8 (3d Dist.), citing *Hunt v. Marksman Prod.*, 101 Ohio App.3d 760, 762 (9th Dist.1995); *Castlebrook, Ltd. v. Dayton Properties Ltd. Partnership*, 78 Ohio App.3d 340, 346 (2d Dist.1992).

{¶52} The trial court reviewed the amended complaint in this case and determined that the complaint failed to raise any factual allegations against Risser, individually; and therefore, granted the Civ.R. 12(B)(6) motion to dismiss her from the case. (Dec. 23, 2011 Order, Doc. No. 24). Upon review of the complaint, we conclude that the trial court did not err by dismissing Risser from the case.

{¶53} ISHA's amended complaint listed five counts, including Count One seeking specific performance of the option to purchase; Count Two seeking declaratory relief concerning the enforceability of the option to purchase; Count Three alleging breach of the option to purchase; Count Four alleging breach of the notice provisions in the lease agreement; and Count Five alleging common law fraud. (Doc. No. 17). Paragraph three of the complaint identified Risser as a natural person residing in Allen County, Ohio. (*Id*.). Paragraph 28 of the complaint, under Count One, stated, "[d]efendants, in an effort to cause ODOT to

believe that Trustee owned all interests in the Property, and that ISHA was only a tenant with no rights other than a term lease, provided ODOT with an altered version of the Lease which failed to reflect ISHA's option." (*Id*.). Paragraph 29 of the complaint, also under Count One, stated, "[f]urther Defendants secreted from ODOT the existence of Lessor's Agreement." (*Id*.). However, under Count Five of the complaint, where ISHA was required to specifically allege common law fraud, ISHA alleged that "*Trustee and/or Joseph Baber* provided to ODOT a false document." (*Id*.). Count One's remaining allegations are all directed toward the "Trustee," not Riser, individually. (*Id*.).

**{¶54}** Under Count Three alleging breach of the option, ISHA alleged that "[t]rustee has breached the terms and conditions of the option entered into with ISHA." (*Id*. a ¶ 58) (Emphasis added). In paragraph 60, also under Count Three, ISHA alleged that "Defendants" were liable for its attorney fees for enforcing the option due to "Defendants" bad faith; though, in the very next paragraph, ISHA alleges that, as a result of "Trustee's breach of the Option," it was damaged in excess of $25,000.00. (*Id*. at ¶ 61).

**{¶55}** The prayer of the complaint sought judgment against "Risser, Trustee of the Donna F. Baber Trust" for Counts One and Two, while it sought judgment on Count Three against Riser personally, as well as in her capacity as Trustee. (*Id*. at Prayer). The prayer was silent as to Counts Four and Five. (*Id*.).

**{¶56}** While the complaint sprinkled the term "defendants" in various counts, and even in the prayer, as noted above, the substance of the complaint, on a whole, stated allegations against Risser as Trustee of the Donna F. Baber Trust, the lessor under the lease agreement. All of the allegedly wrongful acts committed by Risser were done in her capacity as trustee—no facts were alleged removing Risser from her status as trustee. The word "defendants" appearing in the various counts of the complaint must be interpreted in light of the specific allegations made in those counts, all of which were directed at the trustee. Upon review of the complaint in its entirety, we are not persuaded that the trial court erred in dismissing Risser from the case in her individual capacity.

**{¶57}** ISHA's third assignment of error is, therefore, overruled.

**{¶58}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WILLAMOWSKI and SHAW, J.J., concur.**

**/jlr**