[Cite as *Opperman v. Klosterman Equip., L.L.C.*, 2015-Ohio-4621.]


# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MERCER COUNTY


JOHN O. OPPERMAN, ET AL.,

    PLAINTIFFS-APPELLEES,           CASE NO.  10-14-09

    v.

KLOSTERMAN EQUIPMENT LLC, ET AL.,

                                **O P I N I O N**

    DEFENDANTS-APPELLANTS.


Appeal from Mercer County Common Pleas Court
Trial Court No. 11-CIV-098

Judgment Affirmed in Part, Reversed in Part and Cause Remanded

Date of Decision:   November 9, 2015


APPEARANCES:

    *Kelly J. Rauch*  for Appellants

    *Eric J. Wilson*  for Appellees

**ROGERS, P.J.**

{¶1} Defendants-Appellants, Klosterman Equipment, LLC ("Klosterman") and Steve Klosterman ("Steve") (collectively "the Defendants"), appeal the judgment of the Court of Common Pleas of Mercer County finding in favor of Plaintiffs-Appellees, John Opperman and Genny Mae, Inc. ("the Corporation") (collectively "the Plaintiffs"). On appeal, the Defendants argue that the trial court erred by (1) determining that the Defendants were guilty of theft; (2) awarding Plaintiffs treble damages; (3) awarding Plaintiffs attorney fees and administrative costs; (4) piercing the corporate veil to find Steve individually liable for the actions of Klosterman; (5) determining that the value of the property that was not returned was $6,177.62; (6) granting Opperman's motion to add a party; and (7) determining that the Defendants failed to present any evidence of their counterclaims. Finally, the Defendants argue that the court's finding that they were guilty of theft was against the manifest weight of the evidence. For the reasons that follow, we affirm, in part, reverse, in part, the judgment of the trial court, and remand with instructions to dismiss the complaint for lack of standing.

{¶2} On June 17, 2011, Opperman filed a complaint in the Court of Common Pleas of Mercer County against the Defendants alleging three separate claims. The first two claims were filed against Klosterman and sought money damages and rescission based on a breach of contract. In his third claim,

Opperman alleged that Steve, as the managing member of Klosterman, was the alter ego of Klosterman, and therefore should be held liable for the actions of his company. The contract was attached to the complaint as an exhibit and labeled Klosterman as the purchaser. Opperman signed his name next to the seller designation, and Steve signed his name next to the buyer designation.

{¶3} The Defendants filed their answer on July 18, 2011. In the answer, they admitted that a contract existed, but denied any wrongdoing.

{¶4} Opperman filed a motion for partial summary judgment on August 22, 2011. In his motion, Opperman argued that he was entitled to the return of all the equipment listed in the contract because Klosterman breached the contract. Opperman attached his own affidavit where he stated that after Klosterman had not paid the remaining balance on the contract, he demanded the return of his property, through his attorney, shortly after June 1, 2011.

{¶5} The Defendants filed a motion for an extension of time in which to file their response to Opperman's motion for partial summary judgment on September 16, 2011. The same was granted on September 19, 2011.

{¶6} On September 26, 2011, Klosterman Development, Inc. filed a notice of the filing of a Chapter 11 bankruptcy proceeding and requested a stay of this case. In the bankruptcy case, it listed Opperman as a potential creditor. The court stayed the case on September 27, 2011.

{¶7} Opperman filed a motion to lift the bankruptcy stay on November 14, 2011, arguing that Klosterman Development was not a party to the lawsuit. Further, he argued that none of the property at issue in this case was listed as an asset of Klosterman Development. The trial court granted said motion the same day.

{¶8} In addition to granting Opperman's motion to lift the bankruptcy stay, the court also granted Opperman's motion for partial summary judgment based on the fact that his motion went unopposed. The court ordered that the Defendants return all of the property listed in the contract, except for the equipment that was sold by Opperman prior to the contract's execution. On November 16, 2011, a nunc pro tunc entry was filed to state that the Defendants were not required to return a piece of equipment that was sold and where part of the proceeds were remitted to Opperman per the contract. The court ordered the Defendants to present the property for pick up on November 21, 2011.

{¶9} Opperman filed a motion for contempt on March 27, 2012. In his motion, Opperman argued that the Defendants failed to comply with the November 16, 2011 order to return Opperman's property. Specifically, he argued that Steve had placed metal ingots on the land in an attempt "to thwart the authority of the law and the court[.]" (Docket No. 36, p. 2). Moreover, Opperman

alleged that the Defendants had failed to return all the property listed in the contract.

{¶10} On May 16, 2012, Opperman filed a motion to file a supplemental complaint, which was attached to the motion. His supplemental complaint alleged six claims against the Defendants. Opperman's first claim alleged that he was entitled to the reasonable rental value of all the equipment from the date of the contract until November 21, 2011 and the reasonable rental value of the equipment that the Defendants failed to return until the property was returned. Opperman's second claim alleged conversion and that he was entitled to damages. His third claim alleged that he had to endure unnecessary recovery expenses in the amount of $4,156.95. In his fourth claim, Opperman argued that the Defendants committed theft of his property in violation of R.C. 2913.01(K)(1), 2913.02(A)(1)-(2), and 2913.02(B), and therefore he was entitled to treble damages, based upon the value of the property, costs, and attorney fees pursuant to R.C. 2307.60 and 2307.61(A)(1)(b)(ii). Opperman's fifth claim alleged that he was forced to expend resources to locate, transport, and fix one of the pieces of equipment, and therefore was entitled to those costs. Finally, in Opperman's sixth claim, he argued that the Defendants had engaged in frivolous conduct.

{¶11} The trial court granted Opperman's motion to file a supplemental complaint on May 16, 2012.

{¶12} The Defendants filed their answer to the supplemental complaint and a counterclaim on May 30, 2012. In addition to denying any wrongdoing, the Defendants alleged several affirmative defenses, including that Klosterman had a possessory mechanics lien on some of the equipment due to repairs it had made that had not been paid by Opperman. The Defendants' counterclaim stated causes of action for defamation, unjust enrichment, and breach of contract.

{¶13} Opperman filed his reply to the Defendants' counterclaim on June 13, 2012.

{¶14} Upon an oral motion, Opperman was granted leave to file an amended complaint, as stated in the court's entry filed on June 5, 2013. Opperman filed his amended complaint on June 20, 2013. His amended complaint added causes of action for money damages, rescission, and contempt of court.

{¶15} The Defendants filed their answer to the amended complaint on July 1, 2013. In addition to generally denying the allegations in the amended complaint, the Defendants also asserted several affirmative defenses. Their answer also included the same counterclaims they had alleged previously.

{¶16} Opperman filed his answer to the Defendants' counterclaim on July 22, 2013.

{¶17} On October 10, 2013, just eight days before the scheduled trial date, Opperman filed a motion to add the Corporation as a party plaintiff, under Civ.R.

17(A), Civ.R. 19(A), and Civ.R. 20(A). In the motion, Opperman stated that the Corporation was the owner of all the property involved in the case. As a result, the trial date was continued to February 2014.

{¶18} On October 18, 2013, Opperman filed a motion to dismiss the Defendants' counterclaim for defamation per se. The Defendants filed their response on November 1, 2013. That same day, the Defendants filed their response to Opperman's motion to add the Corporation as a party plaintiff.

{¶19} The trial court granted Opperman's motion to add a party on December 13, 2013. It also granted Opperman's motion to dismiss count one of the Defendants' counterclaim.

{¶20} The Plaintiffs filed a second amended complaint on February 5, 2014. In the second amended complaint, the Plaintiffs alleged the same previous nine causes of action that were listed in the first amended complaint.

{¶21} On February 25, 2014, the Defendants filed their answer to the second amended complaint and counterclaim. The Plaintiffs filed their answer on March 3, 2014.

{¶22} The matter proceeded to a bench trial on June 5, 2014, where the following testimony was heard.

{¶23} Johnny Opperman ("Johnny") was the first witness to testify on behalf of the Plaintiffs. Johnny testified that he was the son of Opperman and

used to work for Steve from 2008 to March 2011. He stated that he would "run [Steve's] equipment, put in seawall, leveled ground, topsoil. Basically whatever needed to be done with equipment, we did." Trial Tr. p. 15. Johnny claimed that he was fired by Steve after an altercation where Johnny told Steve he was not allowed to rent out the equipment purchased by Steve from Opperman after the contract had already been executed. Johnny testified that after the period to pay on the contract had passed, Steve refused to return the equipment and locked it in his shed.

{¶24} Johnny stated that before any deal was considered he took Steve over to Opperman's to inspect the equipment that was to be part of the deal. Johnny testified that all the equipment was working prior to the contract being executed. He testified that all the equipment was owned by his father, but then explained that the Corporation actually owned the equipment.

{¶25} Johnny was shown a copy of the contract entered into between the parties. The contract was later admitted into evidence. He was asked whether one of the items in the contract was sold prior to the execution of the contract. Johnny explained that a 1984 Ford one-ton dump truck, listed as item #9, had been sold sometime in April, which was before the contract was executed. Next, Johnny was asked to identify a document obtained from the title department. Johnny

testified that the document was the title for the dump truck and that it went inactive on April 30, 2010.

{¶26} Johnny stated that he performed maintenance on all the equipment that was part of the contract. He testified that the Defendants did not spend the money they claimed in their counterclaim on fixing the equipment. Johnny explained, to the contrary, that all of the equipment seemed to run fine from the execution date up until he was fired.

{¶27} Johnny also testified that he was aware of the contents of a tool trailer that was included in the contract. He stated that when the trailer was returned he went through the inventory and noticed several tools missing. Johnny testified that he calculated the replacement cost for the missing tools using comparable tools that were neither cheap nor expensive. In addition to the missing tools, Johnny also testified that Steve's other employees had rendered a chop saw unfixable by failing to properly mix the oil and gas. Receipts for the cost of examining the chop saw and for the purchase of a new chop saw were identified by Johnny and admitted into evidence.

{¶28} Johnny testified that skid loader forks were also included in the contract, although not expressly stated, because he personally delivered them to the Defendants. After the Defendants were ordered to return all the property, they refused to return the forks claiming that they were never Plaintiffs' property.

However, Johnny explained that after they showed Steve a serial number proving they were Plaintiffs', Steve returned the forks.

**{¶29}** Johnny admitted that a low boy trailer, while in working condition, required new brakes to be put on prior to the execution date of the contract. He testified that Steve had repaired the trailer by putting a hydraulic pump on it as well as a cylinder, brake chamber, and possibly a few light bulbs. Johnny stated that all the parts totaled approximately $600.

**{¶30}** On cross-examination, Johnny admitted that neither he nor Opperman took an inventory of all the tools that were included in the trailer prior to the sale date.

**{¶31}** On redirect-examination, Johnny stated that he could truthfully and accurately state what tools were in the trailer when it was sold to the Defendants because he worked out of that trailer for three years.

**{¶32}** John Brunk was the next witness to testify. Brunk testified that he was hired by Opperman to appraise the equipment involved in the contract. He identified his appraisals, which were later admitted into evidence.

**{¶33}** Rick Kremer was the next witness to testify on behalf of the Plaintiffs. Kremer testified that he purchased the low boy trailer from Steve. Kremer testified that he purchased the trailer for $9,500 based upon a receipt issued from K-1 Holdings LLC, which is one of Steve's companies. Kremer also

testified that another receipt was given to him for $1,800 from Klosterman Equipment, LLC. Kremer explained that Steve issued both receipts and that the $1,800 reflected a credit towards the purchase price of $9,500.

{¶34} On cross-examination, Kremer testified that the trailer was in poor condition when he received it from Steve. He explained that after talking with Steve, Steve took care of the repair bill.

{¶35} On redirect-examination, Kremer admitted that he titled the trailer on November 23, 2011. He added that he was unaware that Steve was ordered to return the trailer to Opperman on November 21, 2011.

{¶36} Bill Lennartz was the next witness to testify. Lennartz testified that he was the owner of Jackson's Garage. He stated that he was hired by Opperman to assist in repossessing the equipment that was ordered to be returned to Opperman. Lennartz testified that when they arrived to repossess the equipment, the lane was covered with sand that had metal ingots in it. He explained that he was hesitant to drive over the sand in fear that the ingots would cause a flat tire. Lennartz testified that he and his men moved the sand using some of the equipment they were repossessing and were able to successfully remove the equipment from the property.

{¶37} On cross-examination, Lennartz admitted that none of his equipment was damaged during the repossession of Opperman's equipment.

{¶38} Charles Day was the next witness to testify on behalf of the Plaintiffs. Day testified that he was employed by Jackson's Garage and was assigned to inventory the tools provided in the trailer after repossessing it. Day's inventory was admitted into evidence.

{¶39} Lester Slauter was the next witness to testify. Slauter testified that he did not believe Steve had expended as much money into fixing the equipment as what he claimed.

{¶40} On cross-examination, Slauter admitted that he was only aware of the repairs Steve made during his employment with Klosterman. He could not testify as to the repairs made after the sale date, but prior to his hiring.

{¶41} Wesley Kohnen was the next witness to testify. Kohnen testified that he was formerly employed by Klosterman. During this period, he stated that he did not notice any significant repairs done to any of the equipment at issue in the case. He also testified that the equipment was operable when Klosterman first took possession.

{¶42} John Opperman was the next witness to testify on behalf of the Plaintiffs. Opperman testified that he worked in excavating and trucking for Pepsi Cola. Opperman stated that he first met Steve when Steve came to his house in April 2010. Steve was interested in buying some equipment Opperman had and came to inspect the equipment. After inspecting the equipment together,

Opperman informed Steve that he would sell the equipment for $110,000. Opperman stated that Steve made a counteroffer of $90,000 and then left. Opperman testified that he did not accept this offer and no contract was formed that day.

{¶43} Opperman testified that when Steve returned on May 18, 2010, Steve came with a written contract. Opperman stated that the contract called for a purchase price of $90,000 for certain equipment. According to the contract, Opperman was to receive full payment by June 1, 2011. Further, if a piece of equipment was sold, 80% of the proceeds would be given to Opperman to go towards the purchase price.

{¶44} Opperman stated that after the deadline passed he asked, through Johnny, that the Defendants return the property. Opperman testified that he withdrew his consent for the Defendants to possess the equipment sometime on or after June 1, 2011.

{¶45} Steve Klosterman, as on cross-examination, was the next witness called to testify. Steve testified that he was the sole member and decision maker for Klosterman. He stated that he drafted the contract by himself. Steve added that the whole idea of this agreement was the result of Johnny constantly hounding Steve to buy Opperman's equipment. He explained that he eventually gave in and went to Opperman's to view the equipment. He described the equipment as

mostly being in poor condition, including the low boy trailer. Steve claimed that he initially offered $75,000 in contrast to Opperman's claims, although he eventually agreed to purchase the equipment for $90,000.

{¶46} Steve testified that he had to perform a lot of repairs to the equipment. He stated that he had to buy new batteries and that the low boy trailer was in very bad shape. Steve explained that while Jackson's performed some of the work, which was accompanied by receipts, he performed most of the repairs himself. He testified that he estimated the parts and labor to be $10,700.

{¶47} Steve admitted that if Opperman had sold the dump truck, included in the contract as item #9, before the contract was signed, then Steve's second cause of action in the counterclaim would have no merit.

{¶48} Steve testified that he signed his name on the contract on behalf of Klosterman, which was the purchaser under the contract. Steve also stated that he did not remember being told that Opperman withdrew his consent for Steve to possess the equipment on or after June 1, 2011. He clarified that he remembered Opperman's counsel calling him and telling him that Opperman had withdrawn consent.

{¶49} Steve stated that he did not return any of the property until the court order mandated he do so. He admitted that he did not return the skid loader forks because he did not believe Opperman owned them. Further, they were not a

separate line item on the contract. He also admitted that he did not take an inventory of the tool trailer when he took possession of it.

{¶50} Steve testified that his employees grade the road to his business every day with sand, which has metal ingots in it, so trucks can get in and out. He stated that the ingots come in the sand that he purchases for the road.

{¶51} Keith Faber was the next witness to testify. Faber testified that he was an attorney working for the firm Faber and Associates. Faber stated that the attorney fees in this case were reasonable. At the conclusion of Faber's testimony, the Plaintiffs rested.

{¶52} Dan Meyer was the first witness to testify on behalf of the Defendants. Meyer testified that he worked for Lefeld's. He stated that one day a person dropped off two chop saws for repair and gave the name of John Opperman Trucking to bill. However, the phone number that was given to him belonged to Klosterman. Meyer testified that he called Opperman to pick up the saws when the repairs were made to one of them. Meyer stated that Opperman came in and stated that he sold all of his equipment to the Defendants. Meyer added that he then credited Opperman's account for the repairs.

{¶53} Jim Frantz was the next witness to testify. Frantz testified that he had worked in highway construction for his whole career. He stated that he worked for Klosterman on and off from 2007 to 2012. Frantz added that the low

boy trailer was in poor condition when Klosterman took possession of it. He testified that the deck was in bad shape, the pony motor and brakes did not work, the tires were in bad condition, and some of the lights did not work. He also stated that he was aware of the sand on Klosterman's property and that he has never gotten a flat tire as a result of the ingots in the sand.

{¶54} Shane LeCompte was the next witness to testify on behalf of the Defendants. LeCompte testified that he worked for Klosterman. LeCompte stated that he put sand on the road near Klosterman's every day. He also stated that he was unaware of any incidents involving the sand that resulted in a flat tire. After LeCompte testified, the Defendants rested.

{¶55} The trial court issued its decision in an entry filed on August 11, 2014. The court found that Plaintiffs had entered into a valid and enforceable contract with both Defendants. It found that the Defendants had breached the contract by failing to pay the balance as of June 1, 2011. Therefore, the court found that the Plaintiffs were entitled to $66,000 in damages, reflecting the outstanding balance owed on the contract. However, because some property had been recovered, the Plaintiffs were only entitled to the value of the property not returned. The trial court found the value of the property not returned to be $6,177.62. Further, because the Defendants failed to return all the property on November 21, 2011, the Defendants were found to be in contempt of court. The

trial court also found that the Defendants committed theft of the property "having knowingly exerted control over it beyond the scope of any express or implied authority of plaintiffs." (Docket No. 175, p. 5). Thus, the Plaintiffs were entitled to treble damages or $18,532.86 plus attorney fees and administrative costs. The court also awarded Plaintiffs $6,076.47 for the costs of hiring someone to repossess the equipment and repair the low boy trailer as a result of Defendants being held in civil contempt of court. The court found that the Defendants were not guilty of criminal contempt since the metal ingots were placed on the road in the Defendants' regular course of business and that the ingots posed no threat to the Plaintiffs' tires. The Plaintiffs' claim for the reasonable rental value of the equipment was dismissed. The court awarded Plaintiffs $10,000 in attorney fees. The final amount awarded to the Plaintiffs was $34,609.33 plus interest. Finally, the trial court found that the Defendants had failed to present any evidence as to their counterclaims and the same were dismissed.

{¶56} The Defendants filed this timely appeal, presenting the following assignments of error for our review.

### *Assignment of Error No. I*

**THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT DETERMINED THAT APPELLANTS WERE GUILTY OF THEFT.**

*Assignment of Error No. II*

**THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT AWARDED APPELLEES TREBLE DAMAGES.**

*Assignment of Error No. III*

**THE TRIAL COURT ERRED WHEN IT AWARDED APPELLEES ATTORNEY FEES AND ADMINISTRATIVE COSTS.**

*Assignment of Error No. IV*

**THE TRIAL COURT ERRED IN PIERCING THE CORPORATE VEIL AND FINDING STEVEN R. KLOSTERMAN INDIVIDUALLY LIABLE FOR THE ACTIONS OF KLOSTERMAN EQUIPMENT, LLC.**

*Assignment of Error No. V*

**THE TRIAL COURT'S FINDING THAT APPELLANTS WERE GUILTY OF THEFT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

*Assignment of Error No. VI*

**THE TRIAL COURT ERRED WHEN IT DETERMINED THAT THE VALUE OF THE PROPERTY THAT WAS NOT RETURNED TO APPELLEES WAS $6,177.62.**

*Assignment of Error No. VII*

**THE TRIAL COURT ERRED WHEN IT GRANTED APPELLEE'S MOTION TO ADD A PARTY.**

*Assignment of Error No. VIII*

**THE TRIAL COURT ERRED WHEN IT DETERMINED THAT APPELLANTS FAILED TO PRESENT ANY**

**EVIDENCE OF THEIR COUNTERCLAIMS AND SUMMARILY DISMISSED SAME.**

**{¶57}** Due to the nature of the Defendants' assignments of error, we elect to address some of them together and out of order.

*Assignment of Error No. VII*

**{¶58}** In their seventh assignment of error, the Defendants argue that the trial court erred by adding the Corporation as a party plaintiff to the lawsuit. We agree.

**{¶59}** A trial court's decision to add new parties to a lawsuit is subject to a review for abuse of discretion. *Darby v. A-Best Products Co.*, 102 Ohio St.3d 410, 2004-Ohio-3720, ¶ 12. A trial court will be found to have abused its discretion when its decision is contrary to law, unreasonable, not supported by the evidence, or grossly unsound. *State v. Boles*, 187 Ohio App.3d 345, 2010-Ohio-278, ¶ 16-18 (2d Dist.). When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶60}** On appeal, the parties framed this issue relative to Civ.R. 15(C), which governs the relation back of amendments to pleadings. Civ.R. 15(C) provides,

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment

relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

**{¶61}** Civ.R. 15(C), however, does not contemplate relation back when a party seeks to add a plaintiff to the suit. In response, the Supreme Court of Ohio has noted:

> The Ohio Rules of Civil Procedure, including Civ.R. 15(C), were patterned after the Federal Rules of Civil Procedure. The 1966 Advisory Committee Notes to federal Rule 15(c) state: 'The relation back of amendments changing plaintiffs is not expressly treated in * * * Rule 15(c) since the problem is generally easier. * * * [T]he chief consideration of policy is that of the statute of limitations, and the attitude taken in * * * Rule 15(c) toward change of defendants extends by analogy to amendments changing plaintiffs.'
>
> The primary purpose of Civ.R. 15(C) is to preserve actions which, through mistaken identity or misnomer, have been field against the wrong person. * * *
>
> Federal courts have allowed relation back when the new plaintiff is the real party in interest or an original plaintiff brings a new cause of action in a different capacity, but generally not when a new plaintiff brings a new cause of action. * * *

(Footnotes omitted.) *Littleton v. Good Samaritan Hosp. & Health Center*, 39 Ohio St.3d 86, 101 (1988).

{¶62} Although we acknowledge that the parties have framed their arguments concerning the relation back of the amendment to add the Corporation under Civ.R. 15(C), "other courts that have faced similar situations have resolved the matter under Civ.R. 17(A), which governs real parties in interest." *Shefkiu v. Worthington Industries, Inc.*, 6th Dist. Fulton No. F-13-014, 2014-Ohio-2970, ¶ 24.

{¶63} Civ.R. 17(A) provides:

> Every action shall be prosecuted in the name of the real party in interest. * * * No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest.

{¶64} Regardless of what theory the argument is framed, the Supreme Court of Ohio has held that neither is available where the party initiating the case lacks standing. *Fed. Home Loan Mtge. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, ¶38; *see also Shefkiu* at ¶ 26, 28.

> Standing is required to invoke the jurisdiction of the common pleas court. Pursuant to Civ.R. 82, the Rules of Civil Procedure do not extend the jurisdiction of the courts of this state, and a common pleas court cannot substitute a real party in interest for another party if no party with standing has invoked its jurisdiction in the first instance.

*Schwartzwald* at ¶ 38.

{¶65} Thus, before we can address whether the trial court erred by adding the Corporation as a party plaintiff, we must first address whether Opperman had standing to bring this lawsuit.[1]

{¶66} "Ohio law has consistently recognized that because the corporation is a separate entity from its directors and officers, causes of action belonging to the corporation may not be litigated by the officers for their own benefit." *Maloof v. Benesch, Friedlander, Coplan & Aronoff*, 8th Dist. Cuyahoga No. 84006, 2004-Ohio-6285, ¶ 17, citing *Maloof v. Squire, Sanders & Dempsey, L.L.P., et al.*, 8th Dist. Cuyahoga No. 82406, 2003-Ohio-4351.

{¶67} "A corporation is also a separate legal entity from its shareholders, even when there is but *one shareholder*." (Emphasis added.) *Id.*, citing *LeRoux's Billyle Supper Club v. Ma*, 77 Ohio App.3d 417, 420 (6th Dist.1991), citing *First Natl. Bank of Chicago v. F.C. Trebein Co.*, 59 Ohio St. 316 (1898).

{¶68} A shareholder, including a shareholder of a closely held corporation, does not have standing to sue where there is "no showing that he has been injured in any capacity other than in common with all other shareholders as a consequence of the wrongful actions of a third party directed towards the corporation." *Adair v. Wozniak*, 23 Ohio St.3d 174, 178 (1986).

---

[1] Although the Defendants have never raised the issue of standing, "[t]he issue of standing is jurisdictional and may be raised sua sponte." *In re Forfeiture of John Deere Tractor*, 4th Dist. Athens No. 05CA26, 2006-Ohio-388, ¶ 10, citing *Buckeye Fords v. Cuyahoga City Bd. Of Revision*, 78 Ohio St.3d 459 (1997).

{¶69} In the case sub judice, a contract existed between the Corporation and the Defendants.[2] It is clear from the record that Opperman was not the owner of any of the property at issue. Opperman admitted this in his motion to add the Corporation as a party plaintiff. *See* (Docket No. 112). Therefore, any cause of action for breach of contract or rescission belonged to the Corporation and not Opperman. There was no special relationship or duty that would have allowed Opperman to bring this lawsuit on behalf of the Corporation. Moreover, although a contract existed, the contract was not of the type that gives a shareholder standing to sue. *See Adair* at 179 ("A personal guaranty for a loan to a corporation can be a basis for a personal cause of action by a stockholder.").

{¶70} Because his alleged injury was not separate and distinct from the alleged injury to the Corporation, Opperman lacked standing to initiate litigation. Accordingly, we find that the trial court abused its discretion when it allowed the Corporation to be added as a party plaintiff in the case.

{¶71} Therefore, we sustain the Defendants' seventh assignment of error.

*Assignments of Error Nos. I, II, III, IV, V, and VI*

{¶72} Given our resolution of the Defendants' seventh assignment of error, the Defendants' first, second, third, fourth, fifth, and sixth assignments of error are rendered moot, and need not be considered. App.R. 12(A)(1)(c).

---

[2] Although Opperman signed his name on the contract, it is clear from the record that he was signing on behalf of the Corporation.

*Assignment of Error No. VIII*

{¶73} In their eighth assignment of error, the Defendants argue that the trial court erred when it dismissed their counterclaims. Specifically, the Defendants argue that their first counterclaim for defamation per se should not have been dismissed pursuant to Civ.R. 12(B)(6). The Defendants also argue that the trial court's finding that they did not prove their unjust enrichment claim is against the manifest weight of the evidence. We disagree.[3]

*Civ.R. 12(B)(6)*

{¶74} "We review de novo a trial court's disposition of a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted." *RMW Ventures, L.L.C. v. Stover Family Invests., L.L.C.*, 161 Ohio App.3d 819, 2005-Ohio-3226, ¶ 8 (3d Dist.), citing *Hunt v. Marksman Prods.*, 101 Ohio App.3d 760, 762 (9th Dist.1995). "Dismissal is appropriately granted if all the factual allegations of the complaint are presumed true, all reasonable inferences are made in favor of the nonmoving party, and it appears beyond doubt that the nonmoving party cannot prove any set of facts entitling him to the requested relief." *Id.*, citing *State ex rel. Hanson v. Guernsey Cty. Bd. Of Commrs.*, 65 Ohio St.3d 545, 548 (1992).

---

[3] The Defendants originally alleged another counterclaim, but conceded that claim at trial and do not challenge the court's decision to dismiss said claim.

{¶75} In their answer and counterclaim, the Defendants alleged that the Plaintiffs defamed them by filing a claim alleging theft. However, "Under Ohio law, a defamation action cannot be maintained regarding defamatory statements made in a judicial pleading if such statements are reasonably related to the proceedings." *Kirshner v. Shinaberry*, 64 Ohio App.3d 536, 538 (6th Dist.1989), citing *Surace v. Wuliger*, 25 Ohio St.3d 229 (1986), syllabus. Such privilege is necessary to protect litigants and potential litigants from the possibility of a flood of defamation suits. *See id.* at 538-539.

> However, because of the potential for abuse of the privilege, American courts have added one condition: that the statements be 'pertinent to the occasion of privilege.' In determining what is pertinent, the court should avoid relevancy terms because of the potential confusion with legal relevancy. Instead, the court should consider whether the matter has " 'reference and relation to the subject-matter of the action.' "

(Citations omitted.) *Id.* at 539.

{¶76} In their brief, the Defendants fail to cite any authority as to why the trial court erred by dismissing their defamation claim. Further, Ohio law allows alleged victims of theft to bring civil suits against the wrongdoer. R.C. 2307.60. Since the Defendants argued that the defamatory remarks were made when the Plaintiffs filed their claim for theft, such remarks were directly related to the subject-matter of the action. Therefore, the trial court did not err when it dismissed the Defendants' first counterclaim for defamation.

*Manifest Weight of the Evidence*

**{¶77}** Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. *C. E. Morris Co. v. Foley Const. Co.*, 54 Ohio St.2d 279, 280 (1978). "[W]hen reviewing a judgment under a manifest-weight-of-the-evidence standard, a court has an obligation to presume that the findings of the trier of fact are correct." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 24. Mere disagreement over the credibility of witnesses or evidence is not sufficient reason to reverse a judgment. *Seasons Coal Co., Inc. v. City of Cleveland*, 10 Ohio St.3d 77, 81 (1984).

**{¶78}** The Defendants argue that they presented evidence of unjust enrichment, contrary to the court's finding, and that therefore the trial court's finding is against the manifest weight of the evidence. This argument is flawed. It is true that the Defendants elicited testimony and produced exhibits stating that repairs were made to certain pieces of equipment. Specifically, Steve testified that he spent over $10,000 to fix the equipment, and a written estimate created by Steve was admitted into evidence. Additionally, other people testified that some minor work was required on the equipment. However, there was also testimony elicited from the Plaintiffs that showed that the Defendants' claims were exaggerated. Specifically, Johnny testified that all the work done to the equipment

was possibly only about $600. Further, there was conflicting testimony as to the condition of the equipment the day possession transferred.

{¶79} Therefore, the Defendants' argument is essentially that his witnesses and evidence were more credible than the Plaintiffs'. This argument is not sufficient to reverse a judgment on manifest weight grounds. *See generally Seasons Coal*. Moreover, the trial court's judgment is supported by the testimony and evidence presented at trial. Thus, the trial court did not err by finding that the Defendants had failed to prove their claim for unjust enrichment.

{¶80} Accordingly, we overrule the Defendants' eighth assignment of error.

*Conclusion*

{¶81} Having found error prejudicial to the Defendants, in some of the particulars assigned and argued, we affirm, in part, reverse, in part, the judgment of the trial court, and remand the matter with instructions to dismiss the complaint for lack of standing.

*Judgment Affirmed in Part,*
*Reversed in Part and*
*Cause Remanded*

**WILLAMOWSKI, J., concurs.**
**SHAW, J., dissents.**

**/jlr**